Christopher J. Keller (CK-2347)
Eric J. Belfi (EB-8895)
Michael W. Stocker (MS-1309)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
mstocker@labaton.com

*Counsel for City of Providence and/or*
*the Board of Investment Commissioners*
*and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| J. ROBERT ARBUTHNOT, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>AEROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER,<br><br>                    Defendants. | Case No. 11-cv-7132<br><br>Hon. Colleen McMahon<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF CITY OF PROVIDENCE AND/OR THE BOARD OF**
**INVESTMENT COMMISSIONERS FOR APPOINTMENT AS**
<u>**LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**</u>


## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..........................................................................................................1

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

ARGUMENT ..............................................................................................................................4

I.      PROVIDENCE SHOULD BE APPOINTED LEAD PLAINTIFF ...................................4

      A.      The PSLRA Standard for Appointing Lead Plaintiff ............................................. 4

      B.      Providence is the "Most Adequate Plaintiff" ......................................................... 5

            1.      Providence Has Satisfied the PSLRA's Procedural Requirements ...............................5

            2.      Providence Has the Largest Financial Interest in the Outcome of the Action ..........................................................6

            3.      Providence Satisfies Rule 23's Typicality and Adequacy Requirements .......................................................6

                 (a)      Providence's Claims Are Typical of Those of the Class ..........................................................7

                 (b)      Providence Will Fairly and Adequately Protect the Interests of the Class .................................7

            4.      Providence Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ......................................................8

II.     THE COURT SHOULD APPROVE PROVIDENCE'S CHOICE OF LEAD COUNSEL ..........................................................9

CONCLUSION .........................................................................................................................10

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..................................................................................8, 9

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ...............................................................................7

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................................5, 7, 9

*Quan v. Advanced Battery Techs., Inc.*,
    No. 11 Civ. 2279 (CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ......................6

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ...............................................................................8

## **DOCKETED CASES**

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y. 2004)...............................................................................9

*In re Broadcom Corp. Class Action Litig.*,
    No. 06-cv-5036 (C.D. Cal. 2006) ............................................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal. 2007) ..............................................................................9

*In re HealthSouth Corp. Sec. Litig.*,
    No. 03-cv-1501 (N.D. Ala. 2003).............................................................................10

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-2237, Hr'g Tr.  (S.D.N.Y. June 14, 2007).............................................10

## **FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) *et seq.* ............................................................................................6, 8

15 U.S.C. § 78u-(4) *et seq*............................................................................................ *passim*

2

City of Providence and/or the Board of Investment Commissioners ("Providence") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an order: (1) appointing Providence as Lead Plaintiff for a Class of purchasers of common stock in Aéropostale, Inc. ("Aéropostale" or the "Company"), from February 3, 2011 through August 3, 2011, inclusive (the "Class Period"), in the above-captioned securities action (the "Action"); and (2) approving Providence's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

Providence—an institutional investor with approximately $427 million in assets as of June 1, 2010—respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers of Aéropostale common stock during the Class Period. Providence satisfies all of the prerequisites for lead plaintiff appointment. As set forth in detail below, Providence suffered losses of $67,606, as calculated under widely accepted last-in-first-out ("LIFO") loss calculation methodology. A copy of the PSLRA-required Certification submitted by Providence is attached as Exhibit A to the Declaration of Michael W. Stocker (the "Stocker Declaration"), submitted herewith. This Certification sets forth all transactions of Providence in Aéropostale common stock during the Class Period. In addition, a chart reflecting the calculation of the financial losses of Providence on Aéropostale common stock purchased during the Class Period is attached as Exhibit B to the Stocker Declaration. Accordingly, Providence has a powerful economic interest in directing the litigation and recovering the losses suffered by its fund beneficiaries—an interest believed to be greater than that of any competing movant.

Providence also meets the adequacy and typicality requirements set out under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  Like the other members of the putative Class, Providence seeks recovery of losses incurred as a result of declines in the share price of Aéropostale stock.  Moreover, as a sophisticated institutional investor, Providence is precisely the kind of lead plaintiff that the PSLRA sought to encourage.

Providence also respectfully requests that the Court approve its choice of lead counsel.  Providence's choice for Lead Counsel, Labaton Sucharow, is a nationally-recognized securities class action firm that has recovered billions of dollars in damages for injured shareholders.  Labaton Sucharow is eminently qualified to prosecute this case and has extensive experience in class actions and securities litigation.

**FACTUAL BACKGROUND**

Pending before the Court is a securities class action brought against: (1) Aéropostale, a mall-based specialty retailer of casual apparel and accessories; (2) Thomas P. Johnson, the Company's Chief Executive Officer ("CEO Johnson"); and (3) Marc D. Miller, the Company's Chief Financial Officer and Senior Vice President (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rules 10b-5 promulgated thereunder.

Aéropostale is headquartered in New York and incorporated in Delaware, and its stock trades on the New York Stock Exchange under the ticker symbol "ARO."  Aéropostale principally targets 14 to 17 year-old young women and men through its Aéropostale® stores and 4 to 12 year-old children through its P.S. from Aéropostale™ stores.  The Company's women's fashion division has historically represented approximately 70 percent of Aéropostale's sales.  During the Class Period, Defendants misled investors as to the Company's prospects.  Defendants concealed the fact that Aéropostale was experiencing declining demand for its

women's fashion division and that the Company was enduring pressure on its profit margins as a result of increasing inventory and higher discounts on its clothing.  In light of these conditions, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

Investors began to learn of the true state of the Company on May 5, 2011.  That day, Aéropostale announced disappointing preliminary results for the first quarter of 2011 (the Company's fiscal year ends on the Saturday nearest to January 31; fiscal year 2011 is the 52-week period ending January 28, 2012).  These results included expected earnings that were well below the Company's previously-issued guidance.  CEO Johnson blamed the disappointing results on the need for promotions, as well as the challenging macroeconomic conditions that the Company's core customers were facing.  On this news, Aéropostale's stock dropped $4.20 per share, or 16.4 percent, to close at $21.29 per share on May 5, 2011.

On May 19, 2011, Aéropostale reported its final results for the first quarter of 2011, which aligned with the disappointing forecast provided earlier that month, issued earnings guidance for the second quarter of 2011, and suspended its full-year earnings guidance.  The Company attributed the disappointing outlook to promotions that were necessary to reduce inventory that had built up as a result of merchandising missteps, which included the failure to "deliver a balanced and compelling women's assortment for the first half of [the] year."  In reaction to these revelations, Aéropostale's stock fell $3.04 per share, or 14.2 percent, to close at $18.30 per share on May 20, 2011.

Finally, on August 4, 2011, Aéropostale issued a press release providing a business update for the second quarter of 2011.  For the quarter, the Company reported net sales that were 5 percent lower than the same quarter in the previous year, and earnings per share that were far

below its previous forecast.  On this news, Aéropostale's stock declined $3.99 per share, or 24.15 percent, to close at $12.53 per share on August 4, 2011.

The Company's conduct and the revelations thereof have caused Aéropostale stockholders to lose hundreds of millions of dollars.

## ARGUMENT

### I. PROVIDENCE SHOULD BE APPOINTED LEAD PLAINTIFF

#### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most

4

>capable of adequately representing the interests of class members
>(. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

### B.  Providence is the "Most Adequate Plaintiff"

Providence respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

#### 1.  Providence Has Satisfied the PSLRA's Procedural Requirements

Providence filed this Motion to serve as lead plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news reporting wire service, on October 11, 2011.  *See* Notice, Stocker Decl. Ex. C.  Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication

5

of the notice, *i.e.*, on or before December 12, 2011. Providence has filed its motion within the required time frame.

### 2. Providence Has the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, Providence suffered substantial losses of approximately $67,606 calculated under the LIFO method of accounting for purchases and sales. *See* Loss Analysis, Stocker Decl. Ex. B. Providence is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because it also satisfies Rule 23's typicality and adequacy requirements, Providence is entitled to the legal presumption that it is the most adequate plaintiff.

### 3. Providence Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279 (CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) ("typicality and adequacy of

representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA") (citation omitted); *Glauser*, 236 F.R.D. at 188 ("At this stage in the litigation, the party moving for lead plaintiff . . . need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (citation omitted).

### (a) Providence's Claims Are Typical of Those of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists "where the claims of the Lead Plaintiff arise f[ro]m the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." *Id.* at 188-89. Notably, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).

The typicality requirement is satisfied here because Providence, which is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as other Class members. Like all members of the Class, Providence: (1) purchased or acquired Aéropostale common stock during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result. *See Glauser*, 236 F.R.D. at 189 (discussing the typicality requirement). These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

### (b) Providence Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous ad[voc]acy." *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)).

Providence will fairly and adequately represent the interests of the proposed Class. No antagonism exists between Providence's interests and those of the absent Class members; rather, the interests of Providence and Class members are squarely aligned. In addition, Providence has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Providence suffered substantial losses due to Defendants' alleged fraud and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, Providence satisfies the adequacy requirement.

### 4. Providence Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, Providence, as a large, sophisticated institutional investor, is the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions. Congress noted in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting

8

H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733); *see also Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (citing *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)).

Providence provides retirement benefits to approximately 6,300 participants. Providence had more than $427 million in assets as of June 30, 2010. Providence is a sophisticated institutional investor with sufficient resources to adequately litigate the Action and supervise Class counsel. Providence understands the fiduciary duties of a lead plaintiff, is willing to oversee the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." *See* Certification, Stocker Decl. Ex. A. Thus, as demonstrated herein, Providence is the very personification of the lead plaintiff contemplated by the PSLRA.

## II.   THE COURT SHOULD APPROVE PROVIDENCE'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274.

Labaton Sucharow, Providence's choice for Lead Counsel, has excelled as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y. 2004), in which it recently achieved settlements-in-principle totaling approximately $1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal. 2007), which resulted in a settlement of $624

9

million—the largest securities fraud settlement arising from the financial crisis of 2007 to 2008. Labaton Sucharow also serves as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal. 2006), the largest accounting restatement arising from options backdating. Labaton Sucharow achieved a cash settlement of $160.5 million for the class—at the time, the second-largest cash settlement in an options backdating case. Labaton Sucharow also served as co-lead counsel in *In re HealthSouth Corp. Securities Litigation*, No. 03-cv-1501 (N.D. Ala. 2003), the largest securities fraud arising out of the healthcare industry, which resulted in a total settlement amount of $804.5 million for the class. Labaton Sucharow is currently serving as the court-appointed lead or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and Goldman Sachs Group, Inc., among other significant investor litigations. In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation." *See also* Labaton Sucharow Firm Resume, Stocker Decl. Ex. D.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Providence's selection of Labaton Sucharow as Lead Counsel for the Class.

## **CONCLUSION**

For the foregoing reasons, Providence respectfully requests that the Court: (1) appoint Providence as Lead Plaintiff; and (2) approve Providence's selection of Labaton Sucharow as Lead Counsel for the Class.

Dated: December 12, 2011                    Respectfully submitted,

By: */s/ Christopher J. Keller*

Christopher J. Keller (CK-2347)
Eric J. Belfi (EB-8895)
Michael W. Stocker (MS-1309)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
mstocker@labaton.com

*Counsel for City of Providence and/or the Board of Investment Commissioners and Proposed Lead Counsel for the Class*

Daniel E. Bacine
Lisa M. Lamb
**BARRACK, RODOS & BACINE**
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
dbacine@barrack.com
llamb@barrack.com

*Additional Counsel*