
Exhibit 3

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AEROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER<br><br>Defendants. | ) | No. 11-CV-7132 (CM)(GWG)<br><br>CLASS ACTION |

**DECLARATION OF ADAM D. WALTER ON BEHALF OF A.B. DATA, LTD. REGARDING MAILING OF NOTICE TO POTENTIAL CLASS MEMBERS AND PUBLICATION OF SUMMARY NOTICE**

I, Adam D. Walter, declare as follows:

1. I am a Senior Project Manager of A.B. Data, Ltd.'s Class Action Administration Division ("A.B. Data"), whose Corporate Office is located in Milwaukee, Wisconsin. Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, entered January 31, 2014 (the "Preliminary Approval Order"), A.B. Data was authorized to act as the Claims Administrator in connection with the Settlement in the above-captioned action. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

**MAILING OF THE NOTICE AND PROOF OF CLAIM**

2. Pursuant to the Preliminary Approval Order, A.B. Data mailed the Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice") and the Proof of Claim and Release Form ("Proof of Claim" and collectively with the Notice, the "Notice Packet") to potential Class Members. A copy of the Notice Packet is attached hereto as Exhibit A.

3. On February 12, 2014, A.B. Data received names and addresses of record holders from Lead Counsel, which were provided by counsel for Aéropostale, Inc. Once received, the data was electronically processed by A.B. Data to ensure adequate address formatting and the elimination of duplicate names and addresses. A.B. Data also standardized and updated the list using NCOALink®, a national database of address changes that is compiled by the United States Postal Service (the "USPS").

4. As in most class actions of this nature, the majority of potential Class Members are beneficial purchasers whose securities are held in "street name" –*i.e.*, the securities are purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. A.B. Data maintains a proprietary database with names and addresses of the largest and most common banks, brokers, and other nominees (the "Record Holder Mailing Database"). On February 20, 2014, A.B. Data caused Notice Packets to be mailed to the mailing records contained in A.B. Data's Record Holder Mailing Database.

5. In total, 5,471 Notice Packets were mailed to potential Class Members and their nominees by first-class mail on February 20, 2014.

6. On February 19, 2014, A.B. Data also submitted the Notice to the Depository Trust Company (the "DTC") to post on their Legal Notice System, which offers DTC member banks and brokers access to a comprehensive library of notices concerning DTC-eligible securities.

7. With respect to A.B. Data's outreach to brokers and nominees, the Notice requested that those who purchased or otherwise acquired Aéropostale common stock during the Class Period for the beneficial interest of a person or organization other than themselves either (i) request from A.B. Data copies of the Notice Packet for the beneficial owner, or (ii) provide to A.B. Data the names and addresses of such beneficial owners no later than ten days after such nominees' receipt of the Notice Packet. *See* Notice at section L.

8. As of the date of this Declaration, A.B. Data has received additional names and addresses of potential Class Members from individuals or brokerage firms, banks, institutions and other nominees. A.B. Data has also received requests from brokers and other nominee holders for Notice Packets, which the brokers and nominees are required to mail to their customers. All such mailing requests have been, and will continue to be, complied with and addressed by A.B. Data in a timely manner.

9. In addition, A.B. Data has remailed Notice Packets to persons whose original mailing was returned by the U.S. Postal Service and for whom updated addresses were provided to A.B. Data by the USPS.

10. As of the date of this Declaration, a total of 39,429 Notice Packets have been mailed to potential Class Members and their nominees.

## PUBLICATION OF THE SUMMARY NOTICE

11. In accordance with Paragraph 6c. of the Preliminary Approval Order, on March 6, 2014, A.B. Data caused the Summary Notice to be published in *Investor's Business Daily* and the release of the Summary Notice via *PR Newswire* ("Publication Notice"). Copies of the Publication Notice are attached hereto as Exhibits B and C, respectively.

## TELEPHONE HOTLINE

12. On or about February 20, 2014, a case-specific toll-free number, 866-963-9973, was established with an Interactive Voice Response system and live operators. An automated attendant answers all calls and presents callers with a series of choices to respond to basic questions. If callers need further help, they have the option to be transferred to a live operator during business hours.

13. From February 20, 2014, through the date of this Declaration, A.B. Data received 55 telephone calls.

## WEBSITE

14. On or about February 20, 2014, A.B. Data established a case-specific website, www.AeropostaleSettlement.com, which includes general information regarding the case and its current status, downloadable copies of the Notice, Proof of Claim and Release form, Summary Notice, and downloadable copies of other court documents, including the Stipulation and Agreement of Settlement. The settlement website is accessible 24 hours a day, 7 days a week.

## REPORT ON EXCLUSIONS

15. The Notice informed potential Class Members that requests for exclusion are to be sent to the Claims Administrator, such that they are received no later than April 18, 2014. The Notice also sets forth the information that must be included in each request for exclusion.

16. As of the date of this Declaration, A.B. Data has received one request for exclusion. A copy of the request is attached hereto as Exhibit D.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of April, 2014.

Adam D. Walter

Adam D. Walter

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AEROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER,<br><br>Defendants. | No. 11-CV-7132 (CM)(GWG)<br><br>CLASS ACTION<br><br>**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

**If you purchased or otherwise acquired the publicly traded common stock of Aéropostale, Inc. ("Aéropostale" or the "Company") from March 11, 2011 through August 18, 2011, inclusive (the "Class Period"), and were damaged thereby, you may be entitled to a payment from a class action settlement.**

***A federal court authorized this Notice. This is not a solicitation from a lawyer.***

The purpose of this Notice is to inform you of (1) the pendency of the above-captioned class action (the "Action"); (2) the proposed settlement of the Action; and (3) the hearing to be held by the Court to consider (a) whether the Settlement should be approved; (b) the application by plaintiffs' counsel for attorneys' fees and expenses; and (c) certain other matters (the "Settlement Hearing"). This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement or wish to be excluded from the Class (defined below).[1]

- If approved by the Court, the Settlement will create a $15 million cash Settlement Fund for the benefit of Class Members (after the deduction of Court-approved expenses and fees) and will resolve all claims in the Action.
- The Settlement (1) resolves claims by the City of Providence ("Providence" or "Lead Plaintiff") that Aéropostale, Thomas P. Johnson, and Marc D. Miller ("Defendants") misled investors about Aéropostale's quarterly earnings guidance and inventory management between March 11, 2011 and August 18, 2011 (claims that Defendants deny); (2) avoids the costs and risks of continuing the litigation; (3) pays money to investors like you; and (4) releases Defendants from liability.
- Your legal rights may be affected whether you act or do not act. Read this Notice carefully.
- The Court will review the Settlement at the Settlement Hearing to be held on May 9, 2014.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY JUNE 20, 2014** | The only way to get a payment. |
| **EXCLUDE YOURSELF BY APRIL 18, 2014** | Get no payment. This is the only option that allows you to ever bring or be part of any other lawsuit about the Released Plaintiffs' Claims (defined below) against Defendants and the other Released Defendant Parties (defined below). |
| **OBJECT BY APRIL 18, 2014** | Write to the Court about why you do not like the Settlement, the proposed Plan of Allocation, and/or the request for attorneys' fees and expenses. If you object you will still be a Member of the Class (defined below). |
| **GO TO A HEARING ON MAY 9, 2014** | Ask to speak in Court about the Settlement at the Settlement Hearing. You do not need to appear at the Settlement Hearing in order to participate in the Settlement. |
| **DO NOTHING** | Get no payment. Give up your rights. |

- These rights and options—and the deadlines to exercise them—are explained more fully in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

If you have any questions about this Notice, the Settlement, or your eligibility to participate in the Settlement, please DO NOT contact the Court, Defendants, or Defendants' Counsel. All questions should be directed to Lead Counsel or the Claims Administrator (*see* Question 24 below).

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), dated as of January 29, 2014. To the extent there is any conflict between the definitions of capitalized terms in this Notice and the Stipulation, the definition in the Stipulation controls. A copy of the Stipulation is available by contacting the Claims Administrator or visiting its website, as more fully set forth herein.

## SUMMARY OF THIS NOTICE

### (a) Statement of Plaintiffs' Recovery

Pursuant to this proposed Settlement, a Settlement Fund consisting of $15 million in cash ("Settlement Amount"), plus any accrued interest, has been established. Based on Lead Plaintiff's estimate of the number of shares of the publicly traded common stock of Aéropostale (CUSIP No. 007865108) ("Aéropostale Common Stock") entitled to participate in the Settlement, and assuming that all such shares entitled to participate do so, Lead Plaintiff estimates an average recovery per allegedly damaged share of Aéropostale Common Stock of $0.50 per share, before deduction of Court-approved expenses, such as attorneys' fees and expenses and administrative costs.[2] A Class Member's actual recovery will be a portion of the Net Settlement Fund, determined by comparing his, her, or its "Recognized Loss" to the total Recognized Losses of all Class Members who timely submit acceptable Proofs of Claim, as described more fully herein. An individual Class Member's actual recovery will depend on, for example: (1) the total amount of Recognized Losses of other Class Members; (2) how many shares of Aéropostale Common Stock you purchased or acquired during the Class Period; (3) the purchase price(s) paid; (4) the date of the purchase(s); and (5) whether and when you sold your shares. *See* the Plan of Allocation beginning on Page 9 for information on your Recognized Loss.

### (b) Statement of Potential Outcome if the Action Continued to Be Litigated

The Parties disagree on both liability and damages and the average amount of damages, if any, that would be recoverable if Lead Plaintiff were to prevail on each claim alleged. The issues on which the Parties disagree include, but are not limited to: (1) whether Defendants made any material misstatements or omissions in Aéropostale's public statements within the meaning of the federal securities laws; (2) whether Defendants acted with the required state of mind; (3) the amount by which Aéropostale Common Stock was allegedly artificially inflated (if at all) during the Class Period; (4) the extent to which the various matters that Lead Plaintiff alleged were false and misleading influenced (if at all) the trading price of Aéropostale Common Stock at various times during the Class Period; (5) whether any purchasers/acquirers of Aéropostale Common Stock have suffered damages as a result of the alleged misstatements and omissions in Aéropostale's public statements; (6) the extent of such damages, assuming they exist; (7) the appropriate economic model for measuring damages; and (8) the extent to which external factors, such as general market and industry conditions, influenced the trading price of Aéropostale Common Stock at various times during the Class Period.

Defendants have denied and continue to deny: (1) all of the claims alleged on behalf of the Class, including all claims in the complaints filed in the Action; (2) all allegations of wrongdoing, fault, liability, or damages to Lead Plaintiff and/or the Class; and (3) that they have committed any act or omission giving rise to any liability or violation of law, including the federal securities laws. Defendants believe that they acted at all times properly, in good faith, and consistent with their legal duties and obligations. While Lead Plaintiff believes that it has meritorious claims, it recognizes that there are significant obstacles in the way to recovery.

### (c) Statement of Attorneys' Fees and Litigation Expenses Sought

Labaton Sucharow LLP ("Lead Counsel") intends to make a motion asking the Court to award attorneys' fees not to exceed 33% of the Settlement Fund and to approve payment of litigation expenses incurred to date in prosecuting this Action in an amount not to exceed $650,000, plus any interest on such amounts at the same rate and for the same periods as earned by the Settlement Fund ("Fee and Expense Application"). Lead Counsel's Fee and Expense Application may include a request for an award to Lead Plaintiff for reimbursement of its reasonable costs and expenses, including lost wages, directly related to its representation of the Class in an amount not to exceed $15,000.

If the Court approves the Fee and Expense Application, the average cost per allegedly damaged share of Aéropostale Common Stock for such fees and expenses would be approximately $0.19 per share. The average cost per damaged share will vary depending on the number of acceptable claims submitted. Lead Counsel has expended considerable time and effort in the prosecution of this litigation without receiving any payment, and has advanced the expenses of the litigation, such as the cost of experts, in the expectation that if it were successful in obtaining a recovery for the Class, it would be paid from such recovery. In this type of litigation it is customary for counsel to be awarded a percentage of the common fund recovered as attorneys' fees.

### (d) Further Information

Further information regarding this Action and this Notice may be obtained by contacting the Claims Administrator: *Aéropostale Settlement*, c/o A.B. Data, Ltd., PO Box 170500, Milwaukee, WI 53217-8091, 866-963-9973, www.aeropostalesettlement.com; or Lead Counsel: Labaton Sucharow LLP, 888-219-6877, www.labaton.com, settlementquestions@labaton.com.

**Do Not Call the Court, Defendants, or Defendants' Counsel with Questions About the Settlement. All Questions Should Be Directed to Lead Counsel or the Claims Administrator.**

### (e) Reasons for the Settlement

For Lead Plaintiff, the principal reason for the Settlement is the immediate benefit to the Class. This benefit must be compared to the risk that no recovery might be achieved after anticipated motions for summary judgment and/or a contested trial and likely appeals, possibly years into the future.

Defendants have denied and continue to deny all allegations of wrongdoing or liability whatsoever and believe that they would ultimately prevail in the Action. They are entering into the Settlement solely to eliminate the burden, expense, uncertainty, and distraction of further litigation.

[END OF PSLRA COVER PAGE]

---

[2] An allegedly damaged share might have been traded more than once during the Class Period, and the average recovery indicated above represents the estimated average for each purchase or acquisition of a share that allegedly incurred damages.

## A. BASIC INFORMATION

### 1. Why did I get this notice package?

You or someone in your family may have purchased or otherwise acquired Aéropostale Common Stock during the period between March 11, 2011 and August 18, 2011, inclusive.

The Court in charge of the Action is the United States District Court for the Southern District of New York. The lawsuit is known as *The City of Providence v. Aéropostale, Inc.*, No. 11-cv-07132 (CM)(GWG)(S.D.N.Y.) and is assigned to the Honorable Colleen McMahon, United States District Judge. The people who sued are called plaintiffs, and the companies and persons they sued are called defendants.

Lead Plaintiff in the Action, representing the Class, is the City of Providence. Defendants are Aéropostale, Thomas P. Johnson and Marc D. Miller (collectively, without Aéropostale, the "Individual Defendants").

The Court directed that this Notice be sent to potential Class Members because they have a right to know about a proposed settlement of a class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement. The Court will review the Settlement at a Settlement Hearing on May 9, 2014, at the United States District Court for the Southern District of New York in the Daniel Patrick Moynihan United States Courthouse, Courtroom 14C, 500 Pearl Street, New York, NY 10007-1312 at 10:00 a.m. If the Court approves the Settlement, and after objections and appeals are resolved, a claims administrator appointed by the Court will make the payments that the Settlement allows.

This package explains the Action, the Settlement, Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

### 2. What is this lawsuit about and what has happened so far?

This Action was commenced on October 11, 2011, by the filing of a class action complaint in the United States District Court for the Southern District of New York against Defendants alleging that Defendants violated the federal securities laws.

On January 11, 2012, the Court appointed Lead Plaintiff, approved its selection of Lead Counsel to represent the putative class, and granted Lead Plaintiff permission to file an amended complaint within thirty (30) days.

Following a detailed investigation that included, among other things, the interviews of numerous former Aéropostale employees and review of Aéropostale's public statements, on February 10, 2012, Lead Plaintiff filed the operative Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint"). The Complaint principally alleges, among other things, that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") by making alleged misstatements and omissions during the Class Period regarding the Company's quarterly earnings guidance and inventory management. The Complaint further alleges that Lead Plaintiff and other Class Members purchased or otherwise acquired Aéropostale Common Stock during the Class Period at artificially-inflated prices and were damaged thereby.

On March 12, 2012, Defendants filed a motion to dismiss the Complaint, which Lead Plaintiff opposed on March 26, 2012. On April 2, 2012, Defendants filed a reply brief in further support of their motion. On March 25, 2013, the Court denied Defendants' motion to dismiss.

On April 8, 2013, Defendants filed an Answer to the Complaint, denying its material allegations and alleging affirmative defenses thereto.

On April 24, 2013, Lead Plaintiff moved for an order certifying the Action to proceed as a class action. Shortly thereafter, merits and class-related discovery commenced, including the production of documents by Defendants, Lead Plaintiff, and third parties, which resulted in the production of over one million pages of documents by Defendants, and depositions of Lead Plaintiff, Defendants, and third parties.

On July 10, 2013, Lead Plaintiff and Defendants jointly filed a Stipulation and Order Regarding Class Certification (the "Class Certification Order"). On July 17, 2013, as set forth in the Class Certification Order, the Court certified the Action to proceed as a class action on behalf of all persons and entities that purchased or otherwise acquired the publicly traded common stock of Aéropostale during the Class Period and were damaged thereby.

Defendants and Lead Plaintiff engaged the Honorable Daniel Weinstein (Ret.) ("Judge Weinstein"), a well-respected and highly experienced mediator, to assist them in exploring a potential negotiated resolution of the Action. On October 29, 2013, Lead Plaintiff and Defendants met with Judge Weinstein in an attempt to reach a settlement. The mediation session involved an extended effort to settle the Action and was informed by the exchange of mediation statements in advance of the session, as well as by presentations by counsel for both Lead Plaintiff and Defendants during the session. Following a full day of arm's-length and mediated negotiation under the auspices of Judge Weinstein, Lead Plaintiff and Defendants reached an agreement in principle to settle the Action.

Before agreeing to the Settlement, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) over one million pages of documents produced by Aéropostale; (v) over 300,000 pages of documents produced by third parties, including work papers produced by Aéropostale's independent registered public accounting firm during the Class Period, emails and documents produced by Aéropostale's vendors, and emails and documents produced by financial analysts that followed the Company during the Class Period; and (vi) the applicable law governing the claims and potential defenses. Lead Counsel also interviewed former Aéropostale employees and other persons with relevant knowledge, and consulted with experts on loss causation, damages, accounting, and retail industry issues. Thus, at the time the agreement to settle was reached, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the Parties' positions.

On January 31, 2014, the Court entered the Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, which, among other things, preliminarily approved the Settlement, authorized that this Notice be sent to potential Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

### 3. Why is this a class action?

In a class action, one or more people called class representatives (in this case Lead Plaintiff) sue on behalf of people who have similar claims. The people who have similar claims are known as class members. Here, the Court certified the Action to proceed as a class action on behalf of the Class. Bringing a case as a class action allows adjudication of many similar claims of persons and entities that might be economically too small to bring individually. One court resolves the issues for all class members, except for those who properly exclude themselves from the class.

### 4. What are the reasons for a settlement?

The Court did not finally decide in favor of Lead Plaintiff or Defendants. Instead, both sides agreed to a settlement with the assistance of Judge Weinstein.

Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit. Lead Plaintiff and Lead Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the difficulties in establishing liability. Lead Plaintiff and Lead Counsel have considered the uncertain outcome and the risk of any litigation, especially in complex lawsuits like this one, as well as the difficulties and delays inherent in such litigation. For example, Defendants have raised a number of arguments and defenses (which they would raise at summary judgment and at trial), including that Defendants did not make any material misstatements or omissions, the alleged misstatements and omissions were not material, that Lead Plaintiff would not be able to establish that Defendants acted with the requisite fraudulent intent, and that Class Members, including Lead Plaintiff, did not rely on the alleged misstatements and omissions when they purchased Aéropostale Common Stock during the Class Period. Even assuming Lead Plaintiff could establish liability, Defendants maintained that any potential investment losses suffered by Lead Plaintiff and the Class were caused by external, independent factors, and not caused by Defendants' alleged conduct. In the absence of a settlement, the Parties would present factual and expert testimony on each of these issues, and there is considerable risk that the Court or a jury would resolve the inevitable "battle of the experts" against Lead Plaintiff and the Class.

In light of the amount of the Settlement and the immediate recovery to the Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class. The Settlement Amount, which totals $15 million in cash (less the various deductions described in this Notice), provides substantial benefits now as compared to the risk that a similar or smaller recovery would be achieved after trial and appeal, possibly years in the future, or that no recovery would be achieved at all.

Defendants have denied and continue to deny: (1) all of the claims alleged by Lead Plaintiff on behalf of the Class; (2) any and all allegations of wrongdoing, fault, liability, or damages to Lead Plaintiff and/or the Class; and (3) that they have committed any act or omission giving rise to any liability or violation of law, including the federal securities laws. Although Defendants believe that the claims asserted by Lead Plaintiff on behalf of the Class lack merit and that they would prevail at summary judgment, or at trial, Defendants agreed to enter into the Settlement solely to eliminate the burden, expense, uncertainty, and distraction of further litigation.

## B. WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first have to decide if you are a Class Member.

### 5. How do I know if I am part of the Settlement?

The Court directed that everyone who fits the following description is a "Class Member," unless they are an excluded person or they take steps to exclude themselves from the Class (*see* Question 13 below): all persons and entities that purchased or otherwise acquired the publicly traded common stock of Aéropostale from March 11, 2011 through August 18, 2011, inclusive (the "Class Period"), and who were damaged thereby (the "Class").

### 6. Are there exceptions to being included in the Class?

Excluded from the Class are (i) Defendants; (ii) members of the Immediate Family of the Individual Defendants; (iii) any person who was an Officer or Director of Aéropostale during the Class Period; (iv) any firm, trust, partnership, corporation, or other entity in which any Defendant has or had a controlling interest during the Class Period; (v) the liability insurance carriers of Defendants' Directors and Officers, and any affiliates or subsidiaries thereof; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded from the Class is any Person that otherwise qualifies as a Class Member but properly excludes himself, herself, or itself by timely submitting a valid request for exclusion in accordance with the requirements explained in Question 13 below.

If one of your mutual funds purchased or acquired Aéropostale Common Stock during the Class Period, that alone does not make you a Class Member. You are eligible to be a Class Member only if you individually purchased or acquired Aéropostale Common Stock during the Class Period. Check your investment records or contact your broker to see if you have eligible purchases/acquisitions.

If you only sold Aéropostale Common Stock during the Class Period, your sale alone does not make you a Class Member. You are eligible to be a Class Member only if you **purchased or otherwise acquired** Aéropostale Common Stock during the Class Period.

### 7. What if I am still not sure if I am included?

If you are still not sure whether you are included, you can ask for free help. You can call 866-963-9973 or visit www.aeropostalesettlement.com for more information. Or you can fill out and return the Proof of Claim and Release form ("Proof of Claim"), described in Question 10, to see if you qualify.

## C. THE SETTLEMENT BENEFITS—WHAT YOU GET

### 8. What does the Settlement provide?

In exchange for the Settlement and the release of the Released Plaintiffs' Claims (defined below) against the Released Defendant Parties (defined below), Defendants have agreed to create a $15 million cash fund, which will earn interest, to be divided, after deduction of Court-awarded attorneys' fees and expenses, settlement administration costs, and any applicable taxes (the "Net Settlement Fund"), among all Class Members who send in valid and timely Proofs of Claim.

### 9. How much will my payment be?

Your share of the Net Settlement Fund will depend on several things, including: (1) the total amount of Recognized Losses of other Class Members; (2) how many shares of Aéropostale Common Stock you purchased or acquired during the Class Period; (3) how much you paid for them; (4) when you bought them; and (5) whether or when you sold your publicly traded common stock of Aéropostale, and, if so, for how much.

Your Recognized Loss will be calculated according to the formula shown below in the Plan of Allocation. It is unlikely that you will get a payment for your entire Recognized Loss, given the number of potential Class Members. After all Class Members have sent in their Proofs of Claim, the payment you get will be a portion of the Net Settlement Fund based on your Recognized Loss divided by the total of Recognized Losses of other Class Members. *See* the Plan of Allocation in Question 25 for more information on your Recognized Loss.

## D. HOW YOU GET A PAYMENT—SUBMITTING A PROOF OF CLAIM

### 10. How can I get a payment?

To qualify for a payment, you must submit a completed Proof of Claim. A Proof of Claim is being circulated with this Notice. You may also get a Proof of Claim on the Internet at the websites for the Claims Administrator or Lead Counsel: www.aeropostalesettlement.com or www.labaton.com. The Claims Administrator can also help you if you have questions about the Proof of Claim. Please read the instructions carefully, fill out the Proof of Claim, include all the documents the form asks for, sign it, and mail or submit it so that it is **postmarked or received no later than June 20, 2014**.

### 11. When will I receive my payment?

The Court will hold a Settlement Hearing **on May 9, 2014**, to decide, among other things, whether to approve the Settlement. Even if the Court approves the Settlement, there may still be appeals, which can take time to resolve, perhaps more than a year. It also takes time for all the Proofs of Claim to be processed. All Proofs of Claim need to be **postmarked or received no later than June 20, 2014.**

Once all the Proofs of Claim are processed and claims are calculated, Lead Counsel, without further notice to the Class, will apply to the Court for an order distributing the Net Settlement Fund to eligible Class Members. Lead Counsel will also ask the Court to approve payment of the Claims Administrator's fees and expenses incurred in connection with giving notice and administering the Settlement. Please be patient.

### 12. What am I giving up to get a payment and by staying in the Class?

Unless you exclude yourself (described more fully in Question 13), you will stay in the Class, which means that upon the "Effective Date" you will release all "Released Plaintiffs' Claims" (as defined below) against the "Released Defendant Parties" (as defined below).

"Released Party" or "Released Parties" means individually and collectively the Released Defendant Parties and the Released Plaintiff Parties.

"Released Defendant Party" or "Released Defendant Parties" means Defendants, their past or present or future subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, Officers, Directors, trustees, general partners, limited partners, agents, fiduciaries, contractors, employees, attorneys, auditors, insurers; the spouses, members of the Immediate Families, representatives, and heirs of the Individual Defendants, as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their Immediate Family members; any Person in which any Defendants have a controlling interest; and any of the legal representatives, heirs, successors in interest, or assigns of the Defendants.

"Released Plaintiff Party" or "Released Plaintiff Parties" means Lead Plaintiff, Lead Counsel, and each and every Class Member, regardless of whether that person actually submits a Proof of Claim, seeks or obtains a distribution from the Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation, or is entitled to receive payment from the Fee and Expense Application; their respective past, current, or future trustees, Officers, Directors, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the Immediate Families, representatives, and heirs of any Released Plaintiff Party, as well as any trust of which any such Released Plaintiff Party is the settlor or which is for the benefit of any of their Immediate Family members; any Person in which any Released Plaintiff Party has a controlling interest; and any other Person who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Class Member any of the Released Plaintiffs' Claims (or to obtain the proceeds of any recovery therefrom), whether in whole or in part.

"Released Claims" means collectively Released Plaintiffs' Claims and Released Defendants' Claims.

"Released Defendants' Claims" means all claims, rights, issues, controversies, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every kind, nature, and description, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, or foreign law, or statutory, common, or administrative law, or any other law, rule, or regulation, whether asserted as claims, cross-claims, counterclaims, or third-party claims, whether fixed or contingent, choate or inchoate, accrued or not accrued, matured or unmatured, liquidated or unliquidated, perfected or unperfected, whether class-wide or individual in nature, that previously existed, currently exist, or that exist as of the date of the Court's approval of the Settlement, or that may arise in the future, that the Released Defendant Parties could have asserted against any of the Released Plaintiff Parties that arise out of or relate to the commencement, prosecution, or settlement of the Action (other than claims to enforce the Settlement).

"Released Plaintiffs' Claims" means any and all claims, rights, issues, controversies, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every kind, nature, and description, including both known claims and Unknown Claims (defined below), whether arising under federal, state, foreign law, or statutory, common, or administrative law, or any other law, rule, or regulation, whether asserted as claims, cross-claims, counterclaims, or third-party claims, whether fixed or contingent, choate or inchoate, accrued or not accrued, matured or unmatured, liquidated or unliquidated, perfected or unperfected, whether class or individual in nature, that previously existed, currently exist, or that exist as of the date of the Court's approval of the Settlement, or that may arise in the future, that Lead Plaintiff or any other Class Member asserted or could have asserted in the Action or any other action or in any forum including, without limitation, any federal or state court, or in any other court, arbitration, administrative agency, or other forum in the United States or elsewhere, that in any way arise out of, are based upon, relate to, or are in connection with the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations, or omissions or failures to act alleged, set forth, referred to, involved in any of the complaints filed in the Action, or which could have been raised in the Action, and that in any way arise out of, are based upon, relate to, or concern the purchase, acquisition, or sale of Aéropostale Common Stock during the Class Period. Released Claims do not include: (i) claims to enforce the Settlement; and (ii) any claims asserted in the lawsuit styled *Bell v. Geiger, et al.*, No. 652931/2011 (N.Y. Sup. Ct.).

"Unknown Claims" means any and all claims that Lead Plaintiff, each and every other Class Member, or the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Claims, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to exclude himself, herself, or itself from the Class, or to object or not to object to any aspect of the Settlement. With respect to any and all Released Claims, Lead Plaintiff and each and every other Class Member, on behalf of themselves and each of their respective past, current, or future heirs, executors, trustees, administrators, predecessors, successors, representatives, agents, assigns, and any other Person who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Class Member, any of the Released Plaintiffs' Claims (or to obtain the proceeds of any recovery therefrom), and the Released Defendant Parties stipulate and agree that, upon the Effective Date, they each shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and each and every other Class Member, on behalf of themselves and each of their respective past, current, or future heirs, executors, trustees, administrators, predecessors, successors, representatives, agents, assigns, and any other Person who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Class Member, any of the Released Plaintiffs' Claims (or to obtain the proceeds of any recovery therefrom), and the Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but they each nevertheless intend to and shall expressly, fully, finally, and forever settle and release, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall be deemed to have settled and released, fully, finally, and forever, any and all Released Claims as applicable, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiff and the Released Defendant Parties acknowledge, and other Class Members, on behalf of themselves and each of their respective past, current, or future heirs, executors, trustees, administrators, predecessors, successors, representatives, agents, assigns, and any other Person who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Class Member, any of the Released Plaintiffs' Claims (or to obtain the proceeds of any recovery therefrom), by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

The "Effective Date" will occur when an Order by the Court approving the Settlement becomes Final and is not subject to appeal as set out more fully in the Stipulation on file with the Court and available at www.aeropostalesettlement.com or www.labaton.com.

If you remain a member of the Class, all of the Court's orders about the Settlement will apply to you and legally bind you.

## E. EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep any right you may have to sue or continue to sue Defendants and other Released Defendant Parties, on your own, about the Plaintiffs' Released Claims, then you must take steps to remove yourself from the Class. This is called excluding yourself from—or "opting out" of—the Class. Defendants may withdraw from and terminate the Settlement if requests for exclusion from the Class exceed certain agreed-upon criteria.

### 13. How do I get out of the proposed Settlement?

To exclude yourself from the Class, you must send a signed letter by mail stating that you request to be "excluded from the Class in *The City of Providence v. Aéropostale, Inc.*, No. 11-cv-07132 (CM)(GWG) (S.D.N.Y.)." Your letter must state, the date(s), price(s), and number(s) of shares of all your purchases, acquisitions, and sales of Aéropostale Common Stock during the Class Period. In addition, you must include your name, address, telephone number, and your signature. You must submit your exclusion request by mail so that it is **received no later than April 18, 2014**, to:

*AÉROPOSTALE SETTLEMENT*
EXCLUSIONS
c/o A.B. DATA, LTD.
3410 WEST HOPKINS STREET
MILWAUKEE, WI 53217-8091

You cannot exclude yourself by telephone or by email. Your exclusion request must comply with these requirements in order to be valid. If you write to request to be excluded, you will not get any Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in connection with the Settlement, and you may be able to sue (or continue to sue) Defendants or the other Released Defendant Parties in the future.

### 14. If I do not exclude myself, can I sue Defendants or the other Released Defendant Parties for the same thing later?

No. Unless you exclude yourself, you give up any rights to sue Defendants and the other Released Defendant Parties for any and all Released Plaintiffs' Claims. If you have a pending lawsuit speak to your lawyer in that case **immediately**. **You must exclude yourself from *this* Class to continue your own lawsuit.** Remember, the exclusion deadline is **April 18, 2014**.

### 15. If I exclude myself, can I get money from the proposed Settlement?

No. If you exclude yourself, do not send in a Proof of Claim to ask for any money. But you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against Defendants and the other Released Defendant Parties about the Released Plaintiffs' Claims.

## F. THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

The Court appointed the law firm of Labaton Sucharow LLP to represent all Class Members. These lawyers are called Lead Counsel. You will not be separately charged for these lawyers. The Court will determine the amount of Lead Counsel's fees and expenses, which will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Lead Counsel has not received any payment for its services in pursuing the claims against Defendants on behalf of the Class, nor has it been paid for its litigation expenses. At the Settlement Hearing, or at such other time as the Court may order, Lead Counsel will ask the Court to award it, from the Settlement Fund, attorneys' fees of no more than 33% of the Settlement Fund, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund, and litigation expenses (such as the cost of experts) that have been incurred in pursuing the Action. The request for litigation expenses will not exceed $650,000, plus interest on the expenses at the same rate as may be earned by the Settlement Fund.

## G. OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

### 18. How do I tell the Court that I do not like the proposed Settlement?

If you are a Class Member you can object to the Settlement or any of its terms, the proposed Plan of Allocation, and/or the Fee and Expense Application by Lead Counsel. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve any part or all of the Settlement terms or arrangements. The Court will only consider your views if you file a proper written objection within the deadline and according to the following procedures.

To object, you must send a signed letter stating that you object to the proposed settlement in "*The City of Providence v. Aéropostale, Inc.*, No. 11-cv-07132 (CM)(GWG) (S.D.N.Y.)." Be sure to include your name, address, telephone number, and your signature, identify the date(s), price(s) and number(s) of shares of all purchases, acquisitions, and sales of Aéropostale Common Stock you made during the Class Period, and state the reason(s) why you object to the Settlement and which part(s) of the Settlement you object to. **Unless otherwise ordered by the Court, any Class Member who does not object in the manner described herein will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement and the application for attorneys' fees and expenses.**

Your objection must be filed with the Court and mailed to all of the following so that is **received no later than April 18, 2014**:

| COURT: | LEAD COUNSEL: | DEFENDANTS' COUNSEL: |
|---|---|---|
| Clerk of the Court<br>United States District Court of the Southern District of New York<br>Daniel Patrick Moynihan United States Courthouse<br>500 Pearl Street<br>New York, New York 10007-1312 | Jonathan Gardner<br>LABATON SUCHAROW LLP<br>140 Broadway<br>New York, New York 10005 | Joseph S. Allerhand<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153 |

**19. What is the difference between objecting and seeking exclusion?**

Objecting is simply telling the Court that you do not like something about the proposed Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## H. THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement. You may attend, and you may ask to speak, but you do not have to do so.

**20. When and where will the Court decide whether to approve the proposed Settlement?**

The Court will hold a Settlement Hearing at **10:00 a.m. on May 9, 2014**, at the Daniel Patrick Moynihan United States Courthouse, Courtroom 14C, 500 Pearl Street, New York, New York 10007-1312.

At this hearing, the Honorable Colleen McMahon will consider whether the Settlement is fair, reasonable, and adequate. The Court also will consider the proposed Plan of Allocation for the Net Settlement Fund and Lead Counsel's Fee and Expense Application. The Court will take into consideration any written objections filed in accordance with the instructions set out in Question 18 above. The Court also may listen to people who have properly indicated, within the deadline identified above, an intention to speak at the Settlement Hearing, but all decisions regarding the conduct of the Settlement Hearing will be made by the Court. *See* Question 22 for more information about speaking at the Settlement Hearing. After the Settlement Hearing, the Court will decide whether to approve the Settlement, and, if the Settlement is approved, how much attorneys' fees and expenses should be awarded. We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent. If you want to come to the hearing, you should check the Claims Administrator's website at www.aeropostalesettlement.com or contact Lead Counsel before coming to be sure that the date and/or time has not changed.

**21. Do I have to come to the Settlement Hearing?**

No. Lead Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval. If you submit an objection, you do not have to come to Court to talk about it. As long as you filed and sent your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**22. May I speak at the Settlement Hearing?**

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include with your objection (*see* Question 18 above) a statement that it is your "Notice of Intention to Appear in *The City of Providence v. Aéropostale, Inc.*, No. 11-cv-07132 (CM)(GWG) (S.D.N.Y.)." Persons who intend to object to the Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application, and desire to present evidence at the Settlement Hearing must also include in their written objection the identity of any witness they may call to testify and exhibits they intend to introduce into evidence at the Settlement Hearing. You cannot speak at the Settlement Hearing if you excluded yourself from the Class or you have not provided written notice of your objection and intention to speak at the Settlement Hearing in accordance with the procedures described in Questions 18 and 22.

## I. IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing and you are a Member of the Class, you will get no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties about the Released Plaintiffs' Claims, ever again. To share in the Net Settlement Fund you must submit a Proof of Claim (*see* Question 10). To start, continue, or be a part of any ***other*** lawsuit against Defendants and the other Released Defendant Parties about the Released Plaintiffs' Claims in this case you ***must*** exclude yourself from the Class (*see* Question 13).

## J. GETTING MORE INFORMATION

**24. Are there more details about the proposed Settlement?**

This Notice summarizes the proposed Settlement. More details are in the Stipulation, dated January 29, 2014.

You also can call the Claims Administrator toll free at 866-963-9973; write to *Aéropostale Settlement,* c/o A.B. Data, Ltd., PO Box 170500, Milwaukee, WI, 53217-8091; or visit the websites of the Claims Administrator or Lead Counsel at www.aeropostalesettlement.com and www.labaton.com, where you can find answers to common questions about the Settlement, download copies of the Stipulation or Proof of Claim, and locate other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

You may also review the Stipulation filed with the Court or documents filed in the case during business hours at the Office of the Clerk of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312.

**Please Do Not Call the Court, Defendants, or Defendants' Counsel with Questions About the Settlement. All Questions Should Be Directed to Lead Counsel or the Claims Administrator.**

## K. PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS

### 25. How will my claim be calculated?

The Net Settlement Fund will be distributed to Class Members according to the Plan of Allocation (the "Plan"). The purpose of the Plan is to distribute settlement proceeds equitably to those Class Members who suffered economic losses resulting from the alleged misrepresentations and omissions by Defendants during the Class Period.

The $15 million Settlement Amount and any interest it earns is called the Settlement Fund. The Settlement Fund, minus all taxes, costs, fees and expenses is called the Net Settlement Fund. The Net Settlement Fund will be distributed according to the Plan (described below) only to Class Members who timely submit valid Proofs of Claim that show a Recognized Loss ("Authorized Claimants"), and have an aggregate net trading loss on all Class Period transactions in Aéropostale Common Stock. Class Members who do not timely submit valid Proofs of Claim will not share in the Net Settlement Fund but will otherwise be bound by the terms of the Settlement and all orders and judgments entered in the Action and will give up any right to prosecute the Released Plaintiffs' Claims in this Action or elsewhere. The Court may approve the Plan, or modify it, without additional notice to the Class. Any order modifying the Plan will be posted on the Settlement website at: www.aeropostalesettlement.com and at www.labaton.com.

The Plan is the basis upon which the Net Settlement Fund will be proportionately divided among all Authorized Claimants. Because the Net Settlement Fund is less than the total estimated losses allegedly suffered by Class Members, the formulas described below for calculating Recognized Losses are not intended to estimate the amount that will actually be paid to Authorized Claimants. The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Loss," as described below. The Plan is not intended to estimate or represent the amount a Class Member may have been able to recover after trial. The Court will be asked to approve the Claims Administrator's determinations before the Net Settlement Fund is distributed to Authorized Claimants. **No distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.**

Defendants, Defendants' Counsel, and all other Released Defendant Parties had no involvement in the proposed Plan and will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan, or the payment of any claim. Lead Plaintiff and Lead Counsel likewise will have no liability for their reasonable efforts to execute, administer, and distribute the Settlement.

The following Plan reflects the allegations that the price of Aéropostale Common Stock was artificially inflated during the Class Period by reason of allegedly false and misleading statements made by Defendants about Aéropostale's earnings guidance and inventory management. Defendants deny that Class Members have suffered any damages as a result of any alleged misrepresentation, omission, public statement or other action by Aéropostale during the Class Period; that the price of Aéropostale Common Stock was artificially inflated during the Class Period by reason of any alleged misrepresentation, omission, or otherwise; that Defendants acted fraudulently or wrongfully in any way; or that the alleged harm suffered by Lead Plaintiff and other Class Members, if any, was causally linked to any alleged misrepresentation or omission.

### A. ADDITIONAL DEFINITIONS

This Plan is based on the following principles and additional definitions (listed alphabetically), among others:

1. "Inflation" is the amount by which the price of Aéropostale Common Stock was allegedly overvalued on each day in the Class Period because of the alleged misrepresentations and omissions.
2. "Inflation Loss" is the amount of loss calculated based on the amount of Inflation in the price of Aéropostale Common Stock based on the methodology described below.
3. A "Net Trading Loss (Gain)" for each claimant will be computed by adding up all Trading Losses and subtracting all Trading Gains for all transactions in Aéropostale Common Stock that qualify to participate in the Plan as described herein.
4. The "PSLRA 90-Day Lookback Period" is the period from August 19, 2011 through November 16, 2011, ninety calendar days beginning on the trading day following the end of the Class Period.
5. The "PSLRA 90-Day Lookback Price" is the average of the closing prices for Aéropostale Common Stock over the PSLRA 90-Day Lookback Period and equals $12.55 per share.
6. A "purchase" is the acquisition of Aéropostale Common Stock by any means other than a gift, inheritance or operation of law (as discussed below) or a purchase transaction conducted for the purpose of covering a "short sale" transaction.
7. "Purchase Amount" is the Purchase Price Per Share multiplied by the number of shares of Aéropostale Common Stock purchased in each transaction by a claimant during the Class Period.

8. "Purchase Price Per Share" is the amount paid per share by a claimant to purchase shares of Aéropostale Common Stock.

9. "Recognized Claim" is the amount of the Net Settlement Fund that an Authorized Claimant is entitled to after calculation of the Authorized Claimant's *pro rata* share of the Net Settlement Fund.

10. "Recognized Loss" is the amount of a claim under this Plan and is the number used to calculate an Authorized Claimant's Recognized Claim.

11. A "sale" is the disposition of Aéropostale Common Stock by any means other than a gift, inheritance, or operation of law (as discussed below) or a "short sale" transaction.

12. "Sale Price Per Share" is the amount received per share by a claimant upon the sale of shares of Aéropostale Common Stock.

13. "Sales Proceeds" equals the number of shares of Aéropostale Common Stock purchased in each transaction by a claimant during the Class Period multiplied by: (i) Sale Price Per Share if sold during the Class Period or the PSLRA 90-Day Lookback Period; or (ii) the PSLRA 90-Day Lookback Price of $12.55 per share, if unsold at the end of the PSLRA 90-Day Lookback Period.

14. "Total Inflation Loss" for each claimant will be computed by adding up all Inflation Losses for all transactions in Aéropostale Common Stock by such claimant that qualify to participate in the Plan as described herein.

15. "Trading Gain" means the amount by which the Sales Proceeds exceeds the Purchase Amount for each transaction by a claimant in Aéropostale Common Stock.

16. "Trading Loss" means the amount by which the Purchase Amount exceeds the Sales Proceeds for each transaction by a claimant in Aéropostale Common Stock.

## B. PRINCIPLES

1. *Eligible Purchases*: Claimants must have purchased or otherwise acquired shares of Aéropostale Common Stock between March 11, 2011 and August 18, 2011, inclusive (the Class Period). Further, the market price of Aéropostale Common Stock purchased must have declined due to disclosure of the alleged misrepresentations and omissions. Accordingly, in order for a claimant to be eligible to share in the distribution, the shares of Aéropostale Common Stock must have been purchased during the Class Period and held until at least the close of trading on at least one day when the amount of Inflation in Aéropostale stock price was reduced (specifically, May 5, 2011, May 20, 2011, August 4, 2011, and August 19, 2011). Also, the claimant must have suffered a Net Trading Loss, as described below.

2. *FIFO Matching*: For purposes of computing Inflation Losses, and Trading Losses (Gains) for a claimant's multiple purchases or sales of Aéropostale Common Stock, purchases will be matched to sales using the "first-in/first-out" ("FIFO") inventory method, which matches sales to purchases based on the dates of those transactions. Specifically, when any Proof of Claim includes a sale of shares of Aéropostale Common Stock either during the Class Period or the PSLRA 90-Day Lookback Period, the earliest sale will be matched first against the claimant's opening position on the first day of the Class Period, if any, and then matched chronologically thereafter against each purchase or acquisition during the Class Period. Sales matched to shares of Aéropostale Common Stock from a claimant's opening position are excluded from the calculation of Inflation Loss and Trading Loss (Gain). In addition, all sales prior to May 5, 2011, and purchases matched to such sales are excluded from the calculation of Inflation Loss. Note: Short sales and purchases to cover short sales (whether they occurred before, during, or after the Class Period) are not included when calculating Inflation Loss or Trading Loss (Gain).

3. *Effect of shares acquired from the exercise of call options*: Aéropostale Common Stock acquired during the Class Period through the exercise of an exchange-traded call option shall be treated as a purchase of Aéropostale Common Stock on the date of exercise. The purchase price paid for such stock shall be the closing price of Aéropostale Common Stock on the date of exercise.

4. *Effect of shares disposed of from the exercise of put options*: Aéropostale Common Stock delivered during the Class Period or the PSLRA 90-Day Lookback Period pursuant to the exercise of an exchange-traded put option shall be treated as a sale of Aéropostale Common Stock on the date of exercise. The sale price received for such stock shall be the closing price of Aéropostale Common Stock on the date of exercise.

5. *Effect of open-market purchases at prices lower than the lowest trading price for the day and open-market sales at prices higher than the highest trading price for the day*: Inflation Loss will be reduced dollar-for-dollar to the extent that (i) shares of Aéropostale Common Stock were purchased or acquired at a price below the lowest trading or published price on the date during the Class Period on which the purchase or acquisition was made; or (ii) shares of Aéropostale Common Stock were sold at a price above the highest trading or published price on the date during the Class Period or the PSLRA 90-Day Lookback Period on which the sale was made.

6. *Treatment of the Acquisition or Disposition of Shares by Means of a Gift, Inheritance or Operation of Law*: The receipt or grant by gift, inheritance or operation of law of a share shall not be deemed a purchase, acquisition, or sale for the calculation of a claimant's Recognized Loss or Recognized Gain, nor shall such receipt or grant be deemed an assignment of any claim relating to the purchase/sale of any such share, unless (i) the donor or decedent purchased or acquired such share during the Class Period; (ii) no Proof of Claim was submitted on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such share; and (iii) it is specifically so provided in the instrument of gift or assignment.

7. Payments made pursuant to this Plan of Allocation shall be conclusive against all Authorized Claimants. No Person shall have any claim against the Lead Plaintiff, Lead Counsel, or any experts and consultants retained by Lead Plaintiff or Lead Counsel, or any claims administrator or Defendants (or any person designated by Lead Plaintiff or Lead Counsel or Defendants or Defendants' Counsel) based on distributions made substantially in accordance with this Plan or further orders of the Court. Claimants who fail to complete and file a valid and timely Proof of Claim form shall be barred from participating in distributions from the Net Settlement Fund, unless the Court otherwise orders. Class Members who do not either timely submit a valid request for exclusion or timely submit a valid Proof of Claim will nevertheless be bound by the Settlement and the Judgment of the Court dismissing this Action.

8. Distributions to eligible Authorized Claimants will be made after all claims have been processed and after the Court has approved the Claims Administrator's determinations. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after at least six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel shall, if feasible and economical, reallocate such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Any balance that still remains in the Net Settlement Fund, after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to non-sectarian, not-for-profit charitable organizations serving the public interest, designated by Lead Plaintiff and approved by the Court.

   Each claimant is deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her, or its Proof of Claim.

## C. COMPUTATION OF INFLATION LOSS AND TRADING LOSS

1. ***Inflation Loss***

   For each purchase of Aéropostale Common Stock during the Class Period, the Inflation Loss for each purchase transaction will be computed (using FIFO matching of purchases to sales) as follows:

   i) **If purchased during the Class Period on or before May 4, 2011, and:**

      a) *if sold on or before May 4, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the first corrective disclosure, the Inflation Loss for purchased shares matched to such sales is zero;

      b) *if sold on or after May 5, 2011, but on or before May 19, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the second corrective disclosure, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $4.43 per share, the amount of Inflation removed from Aéropostale stock price on May 5, 2011; or (ii) the difference between the purchase price per share and the sale price per share;

      c) *if sold on or after May 20, 2011, but on or before August 3, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the third corrective disclosure, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $6.81 per share, the total amount of Inflation removed from Aéropostale stock price on May 5, 2011, and May 20, 2011; or (ii) the difference between the purchase price per share and the sale price per share;

      d) *if sold on or after August 4, 2011, but on or before August 18, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the fourth and final corrective disclosure, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $9.94 per share, the total amount of Inflation removed from Aéropostale stock price on May 5, 2011, May 20, 2011, and August 4, 2011; or (ii) the difference between the purchase price per share and the sale price per share;

      e) *if sold on or after August 19, 2011, but on or before November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $11.47 per share, the total amount of Inflation removed from Aéropostale stock price on May 5, 2011, May 20, 2011, August 4, 2011, and August 19, 2011; or (ii) the difference between the purchase price per share and the sale price per share; or

f) *if held as of the close of trading on November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such shares held in such transaction multiplied by the lesser of: (i) $11.47 per share, the total amount of Inflation removed from Aéropostale stock price on May 5, 2011, May 20, 2011, August 4, 2011, and August 19, 2011; or (ii) the difference between the purchase price per share and the PSLRA 90-Day Lookback Price of $12.55 per share.

**ii) If purchased on or after May 5, 2011, but on or before May 19, 2011, and:**

a) *if* sold *on or before May 19, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the second corrective disclosure, the Inflation Loss for purchased shares matched to such sales is zero;

b) *if sold on or after May 20, 2011, but on or before August 3, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the third corrective disclosure, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $2.38 per share, the amount of Inflation removed from Aéropostale stock price on May 20, 2011; or (ii) the difference between the purchase price per share and the sale price per share;

c) *if sold on or after August 4, 2011, but on or before August 18, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the fourth and final corrective disclosure, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $5.51 per share, the total amount of Inflation removed from Aéropostale stock price on May 20, 2011, and August 4, 2011; or (ii) the difference between the purchase price per share and the sale price per share;

d) *if sold on or after August 19, 2011, but on or before November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $7.04 per share, the total amount of Inflation removed from Aéropostale stock price on May 20, 2011, August 4, 2011, and August 19, 2011; or (ii) the difference between the purchase price per share and the sale price per share; or

e) *if held as of the close of trading on November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such shares held in such transaction multiplied by the lesser of: (i) $7.04 per share, the total amount of Inflation removed from Aéropostale stock price on May 20, 2011, August 4, 2011, and August 19, 2011; or (ii) the difference between the purchase price per share and the PSLRA 90-Day Lookback Price of $12.55 per share.

**iii) If purchased on or after May 20, 2011, but on or before August 3, 2011, and:**

a) *if* sold *on or before August 3, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the third corrective disclosure, the Inflation Loss for purchased shares matched to such sales is zero;

b) *if sold on or after August 4, 2011, but on or before August 18, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the fourth and final corrective disclosure, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $3.13 per share, the amount of Inflation removed from Aéropostale stock price on August 4, 2011; or (ii) the difference between the purchase price per share and the sale price per share;

c) *if sold on or after August 19, 2011, but on or before November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $4.66 per share, the total amount of Inflation removed from Aéropostale stock price on August 4, 2011, and August 19, 2011; or (ii) the difference between the purchase price per share and the sale price per share; or

d) *if held as of the close of trading on November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such shares held in such transaction multiplied by the lesser of: (i) $4.66 per share, the total amount of Inflation removed from Aéropostale stock price on August 4, 2011 and August 19, 2011; or (ii) the difference between the purchase price per share and the PSLRA 90-Day Lookback Price of $12.55 per share.

**iv) If purchased on or after August 4, 2011, but on or before August 18, 2011 and:**

a) *if* sold *on or before August 18, 2011*, the last day before the amount of Inflation in Aéropostale stock price was reduced from the fourth and final corrective disclosure, the Inflation Loss for purchased shares matched to such sales is zero;

b) *if sold on or after August 19, 2011, but on or before November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such sales in such transaction multiplied by the lesser of: (i) $1.53 per share, the amount of Inflation removed from Aéropostale stock price on August 19, 2011; or (ii) the difference between the purchase price per share and the sale price per share; or

c) *if held as of the close of trading on November 16, 2011*, the last day of the PSLRA 90-Day Lookback Period, the Inflation Loss equals the number of shares purchased matched to such shares held in such transaction multiplied by the lesser of: (i) $1.53 per share, the amount of Inflation removed from Aéropostale stock price on August 19, 2011; or (ii) the difference between the purchase price per share and the PSLRA 90-Day Lookback Price of $12.55 per share.

If the Inflation Loss is greater than zero, then the claimant has an Inflation Loss for that purchase transaction.

If the Inflation Loss is less than zero, then the claimant has no Inflation Loss for that purchase transaction.

Total Inflation Loss for a claimant is the sum of all Inflation Losses for all transactions in Aéropostale Common Stock.

If a claimant has a Total Inflation Loss for a claimant's purchases of Aéropostale Common Stock, the Claims Administrator will then compute the Trading Loss (Gain), as indicated below.

2. ***Trading Loss (Gain)***

For each purchase of Aéropostale Common Stock during the Class Period, the Trading Loss (Gain) for each purchase transaction (using FIFO matching of purchases to sales) will be computed as follows:

i) *if sold on or before November 16, 2011*, the Trading Loss (Gain) equals the number of shares purchased matched to such sales in such transaction multiplied by the difference between the purchase price per share and the sale price per share; or

ii) *if held as of the close of trading on November 16, 2011*, the Trading Loss (Gain) equals the number of shares purchased matched to such shares held in such transaction multiplied by the difference between the purchase price per share and the PSLRA 90-Day Lookback Price of $12.55 per share.

If the Trading Loss is greater than zero, then the claimant has a Trading Loss for that purchase transaction.

If the Trading Loss is less than zero, then the claimant has a Trading Gain (negative Trading Loss) for that purchase transaction.

Net Trading Loss (Gain) for each claimant will be the sum of all Trading Losses and Trading Gains (negative Trading Losses) for all transactions in Aéropostale Common Stock for that claimant.

If a claimant has a Net Trading Gain (Total Trading Gains exceed or are equal to Total Trading Losses) for the transactions in Aéropostale Common Stock, the claimant will not be eligible to receive a distribution from the Net Settlement Fund.

If there is a Total Inflation Loss and a Net Trading Loss for a claimant's purchases of Aéropostale Common Stock, the Claims Administrator will then compute the Recognized Loss (and Recognized Claim), as indicated below.

## D. RECOGNIZED LOSS AND RECOGNIZED CLAIM

1. ***Recognized Loss***

For transactions in Aéropostale Common Stock, if a claimant has a Total Inflation Loss and a Net Trading Loss, the Recognized Loss for each claimant will be the **lesser** of such claimant's: (i) Total Inflation Loss; or (ii) Net Trading Loss.

2. ***Recognized Claim***

The Recognized Claim for an Authorized Claimant will be based on the claimant's *pro rata* share of the Net Settlement Fund. The claimant's Recognized Claim will be calculated by multiplying the Net Settlement Fund by a fraction, the numerator of which is the claimant's Recognized Loss for transactions in Aéropostale Common Stock and the denominator of which is the aggregate Recognized Losses of **all** Authorized Claimants for **all** transactions in Aéropostale Common Stock.

***Please note that the term "Recognized Loss" is used solely for calculating the amount of participation by Authorized Claimants in the Net Settlement Fund. It is not the actual amount an Authorized Claimant can expect to recover.***

## L. SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased Aéropostale Common Stock during the period between March 11, 2011 and August 18, 2011, inclusive, for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN SEVEN (7) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE, you either: (1) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased Aéropostale Common Stock during such time period; or (2) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and, within seven (7) calendar days of receipt of such copies, mail the Notice and Proof of Claim form directly to the beneficial owners of Aéropostale Common Stock.

If you elect to send the Notice and Proof of Claim to beneficial owners, the Court has directed that, upon such mailing, you shall send a statement to the Claims Administrator confirming that the mailing was made as directed. You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid upon request and submission of appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Claims Administrator:

*AÉROPOSTALE SETTLEMENT*
ATTN: FULFILLMENT DEPARTMENT
c/o A.B. DATA, LTD.
3410 WEST HOPKINS STREET
PO BOX 170500
MILWAUKEE, WI 53217-8091

Phone: 866-561-6065
fulfillment@abdata.com
www.aeropostalesettlement.com

DATED: FEBRUARY 20, 2014

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AEROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER,<br><br>Defendants. | ) | No. 11-CV-7132 (CM)(GWG)<br><br>CLASS ACTION |

**PROOF OF CLAIM AND RELEASE**

**GENERAL INSTRUCTIONS**

1. To be eligible to receive a recovery from the Net Settlement Fund as a Class Member in the class action lawsuit captioned *The City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM)(GWG), pending in the United States District Court for the Southern District of New York, you must fully complete Parts I and II below, fully review Part III below, sign this Proof of Claim and Release form ("Proof of Claim") on Page 3 below, and submit the signed Proof of Claim form as set forth in Paragraph 4 below. If you fail to submit a timely, properly completed, and addressed Proof of Claim, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the Settlement of the Action.

2. If you are NOT a Class Member, as defined in the Stipulation and Agreement of Settlement, dated as of January 29, 2014 ("Stipulation"), and the Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses ("Notice"), DO NOT submit this Proof of Claim. You are not entitled to a recovery.

3. Submission of this Proof of Claim form, however, does not ensure that you will share in the Net Settlement Fund, even if you are a Class Member.

4. **YOU MUST MAIL OR SUBMIT YOUR COMPLETED AND SIGNED PROOF OF CLAIM SO THAT IT IS POSTMARKED OR RECEIVED ON OR BEFORE JUNE 20, 2014, ADDRESSED AS FOLLOWS**:

*ÁEROPOSTALE SETTLEMENT*
c/o A.B. DATA, LTD.
PO BOX 170500
MILWAUKEE, WI 53217-8091

DO NOT MAIL OR DELIVER YOUR PROOF OF CLAIM TO THE COURT, THE PARTIES TO THIS ACTION, OR THEIR COUNSEL. SUBMIT YOUR PROOF OF CLAIM ONLY TO THE ADDRESS ABOVE.

5. If you are a Class Member and you have not timely and validly requested to be excluded from the Class, you will be bound by the terms of the Judgment or Alternative Judgment entered by the Court in this Action, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM. More information on excluding yourself from the Class can be found in the Notice.

The Claims Administrator will acknowledge receipt of your Proof of Claim by mail, within 60 days. **Your claim is not deemed by the Claims Administrator to be submitted unless you receive an acknowledgement postcard.** If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator.

## DEFINITIONS

6. All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Notice that accompanies this Proof of Claim and in the Stipulation. A copy of the Stipulation is available on the Claims Administrator's website at www.aeropostalesettlement.com, as more fully set forth in the Notice.

## IDENTIFICATION OF CLAIMANT

7. You are a Class Member if you purchased or otherwise acquired shares of Aéropostale Common Stock from March 11, 2011 through August 18, 2011, inclusive ("Class Period"), and were damaged thereby. Excluded from the Class are (i) Defendants; (ii) members of the Immediate Family of the Individual Defendants; (iii) any person who was an Officer or Director of Aéropostale during the Class Period; (iv) any firm, trust, partnership, corporation, or other entity in which any Defendant has or had a controlling interest during the Class Period; (v) the liability insurance carriers of Defendants' Directors and Officers, and any affiliates or subsidiaries thereof; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded from the Class is any Person that otherwise qualifies as a Class Member but properly excludes himself, herself, or itself by submitting a valid and timely request for exclusion from the Class in accordance with the requirements set forth in the Stipulation and the Notice.

8. If you purchased or otherwise acquired Aéropostale Common Stock during the Class Period and held the stock in your name, you are the beneficial purchaser or acquirer *as well as* the record purchaser or acquirer. If, however, you purchased or otherwise acquired Aéropostale Common Stock during the Class Period through a third party, such as a nominee or brokerage firm, and the shares were registered in the name of that third party, you are the beneficial purchaser or acquirer of these shares, *but the third party* is the record purchaser or acquirer of these shares.

9. Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser or acquirer of Aéropostale Common Stock that seeks a recovery from the Net Settlement Fund, as well as the purchaser or acquirer of record if different. THIS CLAIM MUST BE SUBMITTED BY THE ACTUAL BENEFICIAL PURCHASER(S), OR AUTHORIZED ACQUIRER(S) OR LEGAL REPRESENTATIVE(S) OF SUCH BENEFICIAL PURCHASER(S) OR ACQUIRER(S), OF THE AÉROPOSTALE COMMON STOCK ON WHICH THIS CLAIM IS BASED.

10. All joint beneficial purchasers or acquirers must sign this claim. Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of Persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of one of the beneficial owner(s) may be used in verifying this claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

## IDENTIFICATION OF TRANSACTION(S)

11. Use Part II of this form entitled "Schedule of Transactions in Aéropostale Common Stock" to supply all required details of your transaction(s) in Aéropostale Common Stock. If you need more space or additional schedules, attach separate sheets providing all of the required information in substantially the same form. Sign and print or type your name and include your Social Security or employer identification number and the full name of the account on each additional sheet.

12. On the schedules, provide all of the requested information with respect to: (i) ***all*** of your holdings of Aéropostale Common Stock as of the beginning of trading on March 11, 2011; (ii) ***all*** of your purchases, acquisitions, and sales of Aéropostale Common Stock which took place at any time beginning March 11, 2001 through, and including November 16, 2011; and (iii) proof of your holdings in Aéropostale Common Stock as of the close of trading on November 16, 2011, whether such purchases, acquisitions, sales, or transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

13. List each purchase, acquisition, sale, and transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each such transaction you list.

14. You are required to submit genuine and sufficient documentation for ***all*** of your transaction(s) in Aéropostale Common Stock that form the basis for this claim. Copies of broker confirmations or other documentation of your purchases, acquisitions, sales or transactions in Aéropostale Common Stock must be attached to your signed Proof of Claim. **DO NOT SEND ORIGINALS; PLEASE KEEP COPIES OF ALL DOCUMENTS THAT YOU SEND TO THE CLAIMS ADMINISTRATOR.** Failure to provide this documentation could delay verification of your claim or result in rejection of your claim. The Parties and the Claims Administrator do not independently have information about your transactions in Aéropostale Common Stock. The Claims Administrator may also request additional information as needed to efficiently and reliably calculate your losses.

For Official Use Only



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*The City of Providence v. Aéropostale, Inc. et al.*
No. 11-CV-7132 (CM)(GWG)

**MUST BE POSTMARKED OR RECEIVED BY JUNE 20, 2014**

## PROOF OF CLAIM AND RELEASE

PLEASE TYPE OR PRINT

**PART I: CLAIMANT IDENTIFICATION**

Beneficial Owner's Name (First, Middle, Last)

Joint Beneficial Owner's Name (First, Middle, Last)

Address Line 1

Address Line 2 (If Applicable)

City State Zip Code

—

Foreign Province Foreign Postal Code Foreign Country

Social Security Number Taxpayer Identification Number

— — OR —

Check Appropriate box:

☐ Individual or Sole Proprietor ☐ Partnership ☐ Estate
☐ Corporation ☐ Pension Plan ☐ Other (please specify)
☐ IRA ☐ Trust

Telephone Number (Daytime) Telephone Number (Evening)

( ) — ( ) —

Email Address

Facsimile Number

( ) —

**WERE YOUR SHARES HELD IN "STREET NAME" (I.E., IN THE NAME OF A STOCK BROKER OR OTHER NOMINEE)? IF SO, THAT BROKER OR NOMINEE IS THE RECORD OWNER. PLEASE FILL IN THE FOLLOWING LINE.**

Record Owner's Name (if different from beneficial owner listed above); e.g., brokerage firm, bank, nominee, etc.

## PART II: SCHEDULE OF TRANSACTIONS IN AÉROPOSTALE COMMON STOCK

| A. Number of shares of Aéropostale Common Stock held at the beginning of trading on March 11, 2011: | | Proof enclosed<br>○ Y ○ N |
|---|---|---|

**B. Purchases or other acquisitions, including by way of exchange, conversion or otherwise (on or after March 11, 2011 through and including November 16, 2011) of Aéropostale Common Stock:**

| Trade Date(s) (List Chronologically) MM DD YY | Number of Shares Purchased or Acquired | Purchase Price Per Share | Total Purchase Price* | Proof enclosed |
|---|---|---|---|---|
| 1. / / | | | | ○ Y ○ N |
| 2. / / | | | | ○ Y ○ N |
| 3. / / | | | | ○ Y ○ N |
| 4. / / | | | | ○ Y ○ N |
| 5. / / | | | | ○ Y ○ N |

**C. Sales or other deliveries, including by way of exchange or otherwise (on or after March 11, 2011 through and including November 16, 2011) of Aéropostale Common Stock:**

| Trade Date(s) (List Chronologically) MM DD YY | Number of Shares Sold | Selling Price Per Share | Total Sales Price* | Proof enclosed |
|---|---|---|---|---|
| 1. / / | | | | ○ Y ○ N |
| 2. / / | | | | ○ Y ○ N |
| 3. / / | | | | ○ Y ○ N |
| 4. / / | | | | ○ Y ○ N |
| 5. / / | | | | ○ Y ○ N |

| D. Number of shares of Aéropostale Common Stock held at the close of trading on November 16, 2011: | | Proof enclosed<br>○ Y ○ N |
|---|---|---|

*** Excluding taxes, fees and commissions.**

IF YOU REQUIRE ADDITIONAL SPACE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT AS ABOVE. SIGN AND PRINT YOUR NAME ON EACH ADDITIONAL PAGE.

**YOU ARE NOT FINISHED, PLEASE READ THE RELEASE AND SIGN THE PAGE BELOW.**
**FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

## PART III: ACKNOWLEDGEMENTS, RELEASE OF CLAIMS, SUBMISSION TO JURISDICTION, AND CERTIFICATION

By signing and submitting this Proof of Claim form, the claimant(s), or the person(s) acting on behalf of the claimant(s), certify (certifies) that:

1. I (We) submit this Proof of Claim under the terms of the Stipulation and Agreement of Settlement described in the Notice.

2. I (We) have read and understand the content of the Notice and this Proof of Claim, including the releases provided for in the Settlement and the terms of the Plan of Allocation.

3. I (We) have not submitted any other claim covering the same purchases, acquisitions or sales or holdings of Aéropostale Common Stock during the Class Period and know of no other Person having done so on my (our) behalf.

4. I (We) hereby warrant and represent that I (we) am (are) not excluded by definition from the Class as set forth in the Notice and as defined therein.

5. I (We) hereby warrant and represent that I (we) have not submitted a request for exclusion from the Class.

6. I (We) hereby warrant and represent that I (we) have included accurate information about all of my (our) purchases, acquisitions, or sales in Aéropostale Common Stock that form the basis for this claim and the number of shares and/or notes held by me (us) at the beginning of trading on March 11, 2011, and at the close of trading on November 16, 2011.

7. The number(s) shown on this form is (are) the correct Social Security Number(s) and/or Taxpayer Identification Number(s).

8. I (We) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so.

9. I (We) submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein.

10. I (We) acknowledge that I (we) will be bound by and subject to the terms of any Judgment or Alternative Judgment that may be entered in the Action.

11. I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Released Plaintiffs' Claims each and all of the Released Defendant Parties as those terms and terms related thereto are defined in the accompanying Notice as set forth in the Stipulation.

12. This release shall be of no force or effect unless and until the Court approves the Stipulation and the Effective Date has occurred. I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

13. I am/we are NOT subject to backup withholding (if you have been notified by the IRS that you are subject to backup withholding, strike out the word NOT in this sentence).

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS PROOF OF CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE:

Executed this ______ day of ________________, in __________________, _________________.
(Month / Year) (City) (State / Country)



(Sign your name here)

___________________________________________________________

(Type or print your name here)

___________________________________________________________

(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

**THIS PROOF OF CLAIM FORM MUST BE POSTMARKED OR RECEIVED NO LATER THAN JUNE 20, 2014, AND MUST BE MAILED TO:**

*ÁÉROPOSTALE SETTLEMENT*
c/o A.B. DATA, LTD.
PO BOX 170500
MILWAUKEE, WI 53217-8091

**Reminder Checklist:**

1. Please sign the above release and certification. If this claim is being made on behalf of joint claimants, both must sign.

2. Remember to attach supporting documentation. Do not highlight the Proof of Claim form or supporting documentation.

3. Do not send original stock certificates or other original documentation; please send only copies. These items cannot be returned to you by the Claims Administrator.

4. Keep a copy of your Proof of Claim form for your records.

5. The Claims Administrator will acknowledge receipt of your Proof of Claim by mail, within 60 days. **Your claim is not deemed by the Claims Administrator to be submitted unless you receive an acknowledgement postcard.** If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator. Also, you can submit your claim using a service that provides you with proof of mailing, such as: registered or certified mail, return receipt requested; express mail that does not waive signature; or courier service.

6. If you move and/or change your name, please inform the Claims Administrator of your new address and/or name.

7. If you have any questions regarding your Proof of Claim, please contact the Claims Administrator at the address below.

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.**

# EXHIBIT B

# IBD'S ETF Market Strategy

## OVERVIEW

IBD's Market Pulse feature has a long history of recognizing shifts in market direction early on to help investors maximize gains in uptrends and protect their portfolios in downtrends. Now we've developed a simple method for trading market index ETFs based on the market direction posted daily in the Market Pulse.

Market Direction
Confirmed uptrend
% Invested: 100%

## HOW IT WORKS

Invest in a market index ETF (QQQ was used in the study) immediately after a new uptrend is announced in Market Pulse and employ these simple allocation rules:

| Market direction | % Invested |
|---|---|
| Confirmed uptrend | 100% |
| Uptrend under pressure | 50% |
| Market in correction | 0% |
| Optional stop loss: Nasdaq falls 2.6% below closing value of uptrend's first day | 0% |

## HOW IT PERFORMS

Since 2003, IBD's ETF Market Strategy produced an estimated cumulative return of:

IBD's ETF Market Strategy vs. the market
Cumulative return
March 17, 2003 - Dec. 31, 2013
IBD's ETF Market Strategy 254%
Nasdaq 280%
S&P 500 114%
'03 '05 '07 '09 '11 '13

For complete details on IBD's ETF Market Strategy go to:
Investors.com/ETFStrategy

# EXCHANGE TRADED FUNDS

## 3-Month Winners & Losers

### TOP 10

| ETF | Symbol | Rel Str Rtg | 3-mth % chg |
|---|---|---|---|
| MV Jr Gold Mine | GDXJ | 43 | 38.5 |
| United States NatGas | UNG | 81 | 32.1 |
| IP Nat Gas ETN | GAZ | 76 | 30.3 |
| MV Egypt Index | EGPT | 88 | 29.5 |
| Spdr S&P Biotech | XBI | 89 | 29.3 |
| GH Solar | TAN | 95 | 27.8 |
| GX Uranium | URA | 68 | 27.7 |
| GX Silver Miners | SIL | 40 | 26.3 |
| IP Softs ETN | JJS | 67 | 24.8 |
| MV Gold Miners | GDX | 31 | 23.0 |

### BOTTOM 10

| ETF | Symbol | Rel Str Rtg | 3-mth % chg |
|---|---|---|---|
| IS MSCI Turkey Inve | TUR | 4 | -19.8 |
| MV Russia | RSX | 8 | -14.7 |
| Spdr S&P Russia | RBL | 7 | -14.1 |
| IS Ftse China 25 | FXI | 12 | -10.8 |
| Spdr S&P Emg Europe | GUR | 10 | -10.5 |
| IS MSCI Mexico | EWW | 10 | -9.4 |
| GH BRIC | EEB | 11 | -9.1 |
| IS MSCI Brazil | EWZ | 6 | -8.9 |
| MV Coal | KOL | 9 | -8.5 |
| ProS Short Russ 2000 | RWM | 5 | -8.2 |

For Tuesday, March 4, 2014. Ranked by Relative Strength

### U.S. Stock/Broad Index

[illegible]

### Leveraged

[illegible]

### Sector/Industry

[illegible]

### Leveraged

[illegible]

### Global

[illegible]

### Leveraged

[illegible]

### Bond/Income

[illegible]

### Leveraged

[illegible]

### Commodity/Currency

[illegible]

### Leveraged

[illegible]

ETF abbreviations: Bldrs=Builders; Brcly=Barclays, DB=Deutsche Bank; DX=DireXion; FstTr=First Trust; GX=Global X; GH=Guggenheim; HT=Holdrs Trust; IP=iPath; IS=iShares; MV=Market Vectors; Nv=Nuveen; ProS=ProShares, PS=PowerShares; RX=Rydex, VG=Vanguard; VS=VelocityShares; WT=WisdomTree

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

AEROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER,

Defendants.

No. 11-CV-7132 (CM)(GWG)

CLASS ACTION

SUMMARY NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

TO: ALL PERSONS AND ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED THE PUBLICLY TRADED COMMON STOCK OF AÉROPOSTALE, INC. ("AÉROPOSTALE") FROM MARCH 11, 2011 THROUGH AUGUST 18, 2011, INCLUSIVE (THE "CLASS PERIOD"), AND WHO WERE DAMAGED THEREBY (THE "CLASS").

*PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE PROPOSED SETTLEMENT OF A CLASS ACTION* LAWSUIT PENDING IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (THE "COURT").

**YOU ARE HEREBY NOTIFIED**, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the Court, that the City of Providence ("Lead Plaintiff"), on behalf of itself and the Class, and Aéropostale, Thomas P. Johnson and Marc D. Miller (collectively, "Defendants"), have reached a proposed settlement in the above-captioned action (the "Action") in the amount of $15,000,000 in cash (the "Settlement Amount"), that, if approved, will resolve all claims in the Action (the "Settlement").

A hearing will be held before the Honorable Colleen McMahon of the United States District Court for the Southern District of New York in the Daniel Patrick Moynihan United States Courthouse, Courtroom 14C, 500 Pearl Street, New York, NY 10007-1312 at 10:00 a.m. on May 9, 2014 to, among other things, determine whether (1) the proposed Settlement should be approved by the Court as fair, reasonable, and adequate; (2) this Action should be dismissed with prejudice as set forth in the Stipulation and Agreement of Settlement, dated January 29, 2014; (3) the proposed Plan of Allocation for distribution of the Settlement Amount, and any interest thereon, less Court-awarded attorneys' fees, Notice and Administration Expenses, Taxes, and any other costs, fees, or expenses approved by the Court (the "Net Settlement Fund") should be approved as fair and reasonable; and (4) the application of Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved. The Court may change the date of the hearing without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

**IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND.** If you have not yet received the full Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice") and a Proof of Claim and Release form ("Proof of Claim"), you may obtain copies of these documents by contacting the Claims Administrator or visiting its website:

*AÉROPOSTALE SETTLEMENT*
c/o A.B. Data, Ltd.
PO Box 170500
Milwaukee, WI, 53217-8091
Telephone: 866-963-9973
www.aeropostalesettlement.com

Inquiries, other than requests for the aforementioned documents or for information about the status of a claim, may also be made to Lead Counsel.

LABATON SUCHAROW LLP
Jonathan Gardner, Esq.
140 Broadway
New York, NY 10005
Telephone: 888-219-6877
www.labaton.com
settlementquestions@labaton.com

If you are a Class Member, to be eligible to share in the distribution of the settlement proceeds, you must submit a Proof of Claim **postmarked or received no later than June 28, 2014.** If you are a Class Member and do not timely submit a valid Proof of Claim, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

To exclude yourself from the Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice such that it is **received no later than April 18, 2014.** If you are a Class Member and do not exclude yourself from the Class, you will be bound by any judgments or orders entered by the Court in the Action.

Any objections to the proposed Settlement, Plan of Allocation, and/or application for attorneys' fees and reimbursement of expenses must be mailed to counsel for the Parties in accordance with the instructions set forth in the Notice, such that they are **received no later than April 18, 2014**, and filed with the Court **no later than April 18, 2014.**

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.** All questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel at the address listed above.

DATED: FEBRUARY 20, 2014

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



We invite you to take a complimentary two week trial.

Call 1.800.831.2525 or go to investors.com/LB1

INVESTOR'S BUSINESS DAILY

Copyright 2014 Investor's Business Daily Inc.

# EXHIBIT C







# Labaton Sucharow LLP Announces Summary Notice Of Pendency Of Class Action And Proposed Settlement And Motion For Attorneys' Fees And Expenses In The City Of Providence Et Al. V. Aeropostale, Inc., Et Al. (11-CV-07132) (S.D.N.Y.)

NEW YORK, March 6, 2014 /PRNewswire/ -- **TO: ALL PERSONS AND ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED THE PUBLICLY TRADED COMMON STOCK OF AEROPOSTALE, INC. ("AEROPOSTALE") FROM MARCH 11, 2011 THROUGH AUGUST 18, 2011, INCLUSIVE (THE "CLASS PERIOD"), AND WHO WERE DAMAGED THEREBY (THE "CLASS").**

**PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE PROPOSED SETTLEMENT OF A CLASS ACTION LAWSUIT PENDING IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (THE "COURT").**

**YOU ARE HEREBY NOTIFIED**, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the Court, that the City of Providence ("Lead Plaintiff"), on behalf of itself and the Class, and Aeropostale, Thomas P. Johnson and Marc D. Miller (collectively, "Defendants"), have reached a proposed settlement in the above-captioned action (the "Action") in the amount of $15,000,000 in cash (the "Settlement Amount"), that, if approved, will resolve all claims in the Action (the "Settlement").

A hearing will be held before the Honorable Colleen McMahon of the United States District Court for the Southern District of New York in the Daniel Patrick Moynihan United States Courthouse, Courtroom 14C, 500 Pearl Street, New York, NY 10007-1312 at 10:00 a.m. on May 9, 2014 to, among other things, determine whether (1) the proposed Settlement should be approved by the Court as fair, reasonable, and adequate; (2) this Action should be dismissed with prejudice as set forth in the Stipulation and Agreement of Settlement, dated January 29, 2014; (3) the proposed Plan of Allocation for distribution of the Settlement Amount, and any interest thereon, less Court-awarded attorneys' fees, Notice and Administration Expenses, Taxes, and any other costs, fees, or expenses approved by the Court (the "Net Settlement Fund") should be approved as fair and reasonable; and (4) the application of Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved. The Court may change the date of the hearing without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

**IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND.** If you have not yet received the full Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice") and a Proof of Claim and Release form ("Proof of Claim"), you may obtain copies of these documents by contacting the Claims Administrator or visiting its website:

*AEROPOSTALE SETTLEMENT*
c/o A.B. Data, Ltd.
PO Box 170500
Milwaukee, WI, 53217-8091
Telephone: 866-963-9973
www.aeropostalesettlement.com

Inquiries, other than requests for the aforementioned documents or for information about the status of a claim, may also be made to Lead Counsel:

LABATON SUCHAROW LLP
Jonathan Gardner, Esq.
140 Broadway
New York, NY 10005
Telephone: 888-219-6877
www.labaton.com
settlementquestions@labaton.com

If you are a Class Member, to be eligible to share in the distribution of the settlement proceeds, you must submit a Proof of Claim **postmarked or received no later than June 20, 2014**. If you are a Class Member and do not timely submit a valid Proof of Claim, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

To exclude yourself from the Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice such that it is **received no later than April 18, 2014**. If you are a Class Member and do not exclude yourself from the Class, you will be bound by any judgments or orders entered by the Court in the Action.

Any objections to the proposed Settlement, Plan of Allocation, and/or application for attorneys' fees and reimbursement of expenses must be mailed to counsel for the Parties in accordance with the instructions set forth in the Notice, such that they are **receivedno later than April 18, 2014**, and filed with the Court **no later than April 18, 2014**.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.** All questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel at the address listed above.

| DATED: FEBRUARY 20, 2014 | BY ORDER OF THE COURT |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF NEW YORK |

SOURCE Labaton Sucharow LLP

RELATED LINKS
http://www.aeropostalesettlement.com

**Find this article at:**
http://www.prnewswire.com/news-releases/labaton-sucharow-llp-announces-summary-notice-of-pendency-of-class-action-and-proposed-settlement-and-motion-for-attorneys-fees-and-expenses-in-the-city-of-providence-et-al-v-aeropostale-inc-et-al-11-cv-07132-sdny-248743471.html

☐ Check the box to include the list of links referenced in the article.

# EXHIBIT D

Exclusion ID: 21749004
Received Date: March 31, 2014

March 10, 2014

Aéropostale Settlement Exclusions
c/o A.B. Data, Ltd.
3410 West Hopkins Street
Milwaukee, WI 53217-8091

Dear Sir or Madam:

I would like to be excluded from the Class in *The City of Providence v. Aéropostale, Inc.*, No. 11-cv-07132 (CM)(GWG) (S.D.N.Y.). I purchased the following shares of Aéropostale during the time period of 3/11/11 through 8/18/11:

- 4/12/11 0.3858 shares @ $25.92 per share
- 5/10/11 0.4740 shares @ $21.10 per share
- 6/14/11 0.5659 shares @ $17.67 per share

Terry Edwards

Terry Edwards