UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated, | 11-CV-07132 (CM) (GWG) |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| AEROPOSTALE, INC., THOMAS P. JOHNSON and MARK D. MILLER | |
| Defendants. | |

**OBJECTION OF DONALD ROBERT PIERSON II TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**

**I.      INTRODUCTION**

Objector DONALD ROBERT PIERSON II, intends to appear at the final approval hearing and is qualified to make a claim.

| Trade Date | # of Shares | Purchase Price Per Share | Purchase Price |
|---|---|---|---|
| 5/11/11 | 100 | 21.5896 | 2,158.96 |
| 5/25/11 | 100 | 18.3544 | 1,835.44 |

Mr. Pierson owned 200 shares on November 16, 2011. He is a Texas State Court judge and cannot disclose his home address or phone number on Pacer but it will be provided to the attorneys for plaintiffs and defendants. A redacted copy of his claim form will also be sent to the attorneys.

**A.      Summary of the Action and the Settlement**

This class action concerns misconduct, including knowing misrepresentation of financial projections and results made by Aeropostale, Inc., a retailer of specialty clothing for girls and young women aged 7 to 17. The First Amended Complaint alleges the Company experienced serious problems beginning with its back-to-school product lines in the Fall of 2010 followed by dismal sales in the 2010 holiday season, which led to the Company

experiencing severe problems in 2011, including a large inventory of unsold products the Company knew were extremely unpopular. The Complaint further alleges that the Company has a sophisticated system to monitor sales, inventory and profit margins, which enables it to know almost immediately when sales are flat and profit margins decline. Because of these sophisticated tracking systems, prior to 2011 the Company had consistently made highly accurate earnings projections in each quarter. Despite knowing almost immediately that the Company was experiencing severe problems in late 2010, the Company continued to report favorable earnings in line with previous results to cover up its dismal sales and other problems in late 2010 and early 2011. The Complaint alleges the Company knowingly made false statements to investors, attempting to cover up the serious problems in the Company, knowing the earnings projections were inaccurate and that the Company's results would continue to deteriorate for several months because of the unpopularity of existing product lines, the large accumulation of unsold inventory and the need to conduct sales at deep discounts to get rid of the excess inventory. The Company eventually acknowledged the serious problems it was facing and made corrective disclosures in May and August of 2011. Because of these corrective disclosures, the Company's stock price declined from $23.05 on March 11, 2011, at the beginning of the class period, to $10.71 at the end of the class period – representing a decline of 53 %. FAC, ¶ 19, page 6. The Complaint alleges class members potentially experienced declines in the value of their stock of as much as $12.34 per share. The settlement proposes compensation to Class Members of less than $0.50 per share.

B.  **The Standard for Approving a Proposed Class Action Settlement**

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation,* 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage*

*Corp.* 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed class members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.'" *Grant*, citing *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986). See also *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent class members.")

Courts also may refuse to approve a settlement if insufficient notice is provided to class members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all class members who would be bound by the proposal." A court may refuse to approve a settlement "unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. Proc. 23(e)(4) Case law has established that "Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages." *Hecht v. United Collection Bureau*, 691 F.3d 218, 222 (2d Cir. 2012), citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 & n.3 (1985).

## II.    ARGUMENT AND OBJECTIONS

### A. The Notice of the Proposed Settlement and Documents Made Available to Class Members are Insufficient

Class Counsel has attempted to satisfy the notice requirements both through mailing of notice and through a settlement website, available at www.aeropostalesettlement.com. The documents on the website are insufficient and fail to include the Complaint, Motion to Approve Class Action Settlement and Plan of Allocation, the Motion for Attorney Fees and Payment of litigation expenses, and the Declaration of Jonathan Gardner in Support re: Motion for Attorney Fees and Payment of litigation expenses, Motion to Approve Class Action Settlement and Plan of Allocation. Review of these documents is necessary to make an informed decision regarding the fairness of the settlement. Except for the Complaint, these documents were filed on April 4, 2014, only two weeks prior to the deadline to object or opt out of the settlement. Although the documents are available through the federal court's

pacer system, they should have been on the settlement website so class members could easily access and review them. It is unfair that class members who have not engaged attorneys may have difficulty obtaining these documents.

It is unfair that the Memorandum of Law in Support of the Motion for Attorney Fees was not provided for class member review. The attorneys for the Class are requesting a large percentage of the settlement be directed to them. Given the large fee award they are requesting, which is well beyond the amounts typically awarded in litigation of this sort, class members should have the opportunity to carefully scrutinize the attorneys' justification for their fees.

Fed. R. Civ. Proc. 23(h) provides (1) A claim for an award [a fee award] must be made by motion . . . subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. The Advisory Committee notes to the 2003 Amendments to Rule 23(h) further support this reading of the rule. They elaborate that "in setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶68. As Class Counsel did not provide the Attorneys' Fee Motion to class members on the Settlement Website, they failed to satisfy the requirements of Rule 23(h). Due to this deficiency the information provided to Class Members did not provide sufficient information to enable absent class members to make a determination as to the reasonableness of the settlement.

### B. The Request for Attorneys' Fees is Unreasonable

#### 1. *Class Counsel's Contingent Fee Request of 33.3% of the Settlement is Excessive*

The fee percentage requested by Class Counsel is out of line with attorney fee awards in the Second Circuit. In their fee motion Class Counsel cite to a handful of cases where the attorneys were awarded fees comparable to the 33.3% requested here, but they have provided no statistical information to support their claim that the 33.3% is in line with typical awards in securities class action cases in the Second Circuit having such a large total settlement fund. See Lead Counsel's Memorandum of Law in Support of Motion for Attorneys' Fees and Payment of Litigation Expenses ("Fee Motion"), pages 6-7. According to a widely quoted

study by Brian Fitzpatrick published in the Journal of Empirical Legal Studies, the mean attorney fee award in the Second Circuit is 23.8%, while the median award is 24.5%. For Securities Class Action cases, the mean award for attorneys' fees in all circuits is 24.7%, while the median is 25%. As studied by Fitzpatrick, attorney fee percentage awards show an inverse relationship to the size of the award. For settlements ranging from $10 million to $15.2 million, the range relevant to this settlement, the mean percentage award is only 24.8%, while the median award is 25% -- much less than the 33.3% award sought by Class Counsel. See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811 (2010). Given this statistical information, the attorneys' fees requested are presumptively unreasonable.

The fee award should reflect the benefits conferred on the class by Counsel's efforts. The settlement compensation of $0.50 per share offered to Class Members is extremely low in comparison to the damages of as much as $12.34 per share alleged by Plaintiffs. Given this, Class Counsel should not be rewarded with an extremely high percentage award. Granting them such a high percentage fee award would reward them for obtaining a less than satisfactory result for their clients.

### 2.  *Class Counsel's Lodestar Calculation is Unreasonable*

The lodestar is based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006). In reviewing the hourly rates used in calculating the lodestar figure, "The court must determine "the rate a paying client would be willing to pay." "The lodestar figure should be based on market rates 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *In Re Citigroup Inc. Securities Litigation*, 965 F.Supp.2d 369, 393 (2013), quoting *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir.2006) and *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The Court must determine "the rate a paying client would be willing to pay." See *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 190 (2d Cir. 2008) and *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 421-22 (2d Cir. 2010) (discussing use of *Arbor Hill* based lodestar calculation as part of cross check on common fund percentage award).

Class Counsel claim their attorneys and paralegals devoted over 14,000 hours to

prosecution of the case since its inception, and claim a lodestar value $7,047,145. They further claim they are requesting a "negative" lodestar multiplier of 0.70. Fee Motion, pg 18. But the Fee Motion does not disclose hourly rates. To determine the hourly fees being charged one must review exhibits to the Declaration of Jonathan Gardner in Support re: Motion for Attorney Fees and Payment of Litigation Expenses, including Exhibit 7. A review of Exhibit 7 indicates that the firm of Labaton Sucharow LLP is billing $6,460,996.50 based on 12,852.2 hours expended on this litigation. Division of the gross amount billed by hours expended reveals that on average Labaton Sucharow is claiming a billing rate of $502.00 per hour for each attorney and paralegal. Robbins Geller Rudman & Dowd LLP is billing $350,713.75 for the 701.50 hours its attorneys and paraprofessionals devoted to the litigation, or on average $499.00 per hour, while Barrack Rodos & Bacine is billing $235,435.00 for the 565.90 its attorneys and paralegals devoted to this litigation, or on average $416.00 per person.

As a large portion of the work included document review, which was no doubt conducted by contract attorneys who may have themselves been compensated at less than $50.00 per hour, it is likely that Class Counsel are claiming highly inflated billing rates for their partners and litigation associates. These firms should be required to justify these exorbitant rates by showing previous clients have been willing to pay such rates in the past.

As discussed in *In re Citigroup,* "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with" prevailing market rates" and that they reflect rates a paying client would be willing to pay. See *Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999) and *In re Citigroup, supra*. After reviewing widely differing estimates of reasonable hourly compensation for contract attorneys, including Objector Frank's common sense assertion that contract attorneys are typically only paid between $20 and $45 per hour (Frank Objection, page 12) the court in *In re Citigroup* reduced the contract attorney rate from the proposed $550 per hour to $200. To substantiate the fees claimed here, Class Counsel should be required to provide evidence that the rates they are claiming are rates they have billed and received in other cases. Given the large percentage of the total settlement to be directed to the attorneys, the court has a duty to ensure that the rates billed are in line with the real value of the legal services rendered. The attorneys have not provided sufficient information to

enable the court to do so. At a minimum the attorneys should be required to produce detailed billing records and rates for each attorney, and information supporting the rate at which each attorney's services are being billed.

### III.    Joinder in Other Objections

This objector joins in all other well-founded and meritorious objections.

### IV.    Conclusions

For the foregoing reasons and all others at oral argument, this objector requests that the court sustain these objections and grant the following relief:

- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated:   April 18, 2014                                By: /s/ Forrest S. Turkish
                                                                   Forrest S. Turkish (FT1197)

                                                             Law Office of Forrest S. Turkish
                                                             595 Broadway Bayonne, NJ 07002
                                                             Phone: (201) 339-8866
                                                             Fax: (201) 339-8456
                                                             Email: fsturkish@aol.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 18, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of New York by using the USDC CM/ECF system.

      I certify that all participants in the case who are registered CM/ECF users that service will be accomplished on today's date by the USDC CM/ECF system, including but not limited to:

**Jonathan Gardner**
Email: jgardner@labaton.com

**Joseph S. Allerhand**
Email: joseph.allerhand@weil.com

      I further certify that on this day copies of this document were mailed via US Postal Service, postage prepaid, to the following recipients:

**Lead Counsel**
**Jonathan Gardner**
Labaton Sucharow, LLP
140 Broadway
New York, NY 10005

**Defendants' Counsel**
**Joseph S. Allerhand**
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue, 25th Fl.
New York, NY 10153

                                             /s/ Forrest S. Turkish
                                               Forrest S. Turkish