UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 11-CV-7132 (CM)(GWG) |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| AÉROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER, | ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MOTION FOR ATTORNEYS' FEES AND
<u>PAYMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 1

I.  THE CLASS REACTION STRONGLY SUPPORTS THE REQUESTED
    RELIEF .............................................................................................................................. 1

II. THE OBJECTIONS SHOULD BE REJECTED ............................................................... 2

    A.  The Turkish Objection Is Baseless and Should be Viewed with Skepticism ......... 2

        1.  The Class Was Provided with the Best Notice Practicable ......................... 3

        2.  The Turkish Objection to the Attorneys' Fee Request Is Unfounded ........ 5

        3.  The Requested Fee in Relation to Recovery Per Share ............................. 8

    B.  The Opp Objection Should Be Rejected .................................................................. 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AIG, Inc. Sec. Litig.*,
 No. 04 Civ. 8141, 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) *aff'd*, 452 Fed.
 App'x 75 (2d Cir. 2012)..................................................................................................2

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988).......................................................................................................10

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013)............................................................................7

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005).........................................................................................................8

*Eisen v. Carlisle & Jacquelin,*
 417 U.S. 156 (1974).........................................................................................................4

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
 No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................2

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................8

*Goldberger v. Integrated Res. Inc.*,
 209 F.3d 43 (2d Cir. 2000).............................................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
 671 F. Supp. 2d 467 (S.D.N.Y. 2009)...........................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
 728 F. Supp. 2d 289 (S.D.N.Y. 2010)...........................................................................3

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950).........................................................................................................4

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*
 164 F.R.D. 362 (S.D.N.Y. 1996) *aff'd,* 107 F.3d 3 (2d Cir. 1996).............................4

*In re Schering-Plough Corp. Enhance Sec. Litig.*
 Nos. 08-397, 2013 WL 5505744 (D.N.J. Oct. 1, 2013).........................................3, 5

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................................................2

*In re UnitedHealth Grp Inc. PSLRA Litig.*,
   643 F. Supp. 2d 1107 (D. Minn. 2009)......................................................................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................................1, 2

*In re WorldCom, Inc. Sec. Litig.*,
   382 F. Supp. 2d 549 (S.D.N.Y. 2005)....................................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................10

**DOCKETED CASES**

*In re Am. Int'l Grp. Sec. Litig.*,
   No. 04-Civ-8141(S.D.N.Y. Mar. 6, 2013).................................................................................3

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   No. 09-MDL-2058 (S.D.N.Y. Mar. 5, 2013).............................................................................3

*Brody v. Merck & Co.*,
   No. 12-cv-4774 (D.N.J. Jan. 31, 2013)....................................................................................3

*In re Citigroup Inc. Sec. Litig.*,
   No. 07-cv-09901 (S.D.N.Y. Mar. 15, 2013)....................................................................3, 7, 8

*EOFF v. Sprint Nextel Corp.*,
   No. 2:10-cv-01190 (D.N.J. Oct. 26, 2012) ..............................................................................3

*In re Ins. Brokerage Antitrust Litig.*,
   No. 04-cv-5184 (D.N.J. Aug. 30, 2011) ..................................................................................3

*In re L.G. Philips LCD Co., Ltd. Sec. Litig.*,
   No. 1:07-cv-00909-RJS (S.D.N.Y. Mar. 3, 2011) ...................................................................3

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
   No. 08-2177 (D.N.J. Aug. 5, 2013) .....................................................................................2, 3

*Ronald Monk v. Johnson & Johnson et al.*,
   No. 10-4841 (D.N.J. Oct. 24, 2013).........................................................................................3

*In re Sanofi Aventis Sec. Litig.*,
   No. 1:07-cv-10279 (S.D.N.Y Dec. 16, 2013)..........................................................................2

*In re Schering-Plough Corp./Enhance Sec. Litig.*,
   No. 08-397 (D.N.J. Aug. 5, 2013) ...........................................................................................2

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   No. 08-cv-11117  (S.D.N.Y. May 11, 2011) ...........................................................................3

**OTHER AUTHORITY**

Fed. R. Civ. P. Rule 23 ..................................................................................................5

Fed. R. Civ. P. Rule 23(e)(1) .........................................................................................4

Fed. R. Civ. P. Rule 23(h).............................................................................................4

Fitzpatrick, Brian, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010)..................................................................5

Lead Plaintiff and Lead Counsel are very pleased to advise the Court of the overwhelmingly positive reaction to the proposed Settlement and motion for attorneys' fees and expenses.  More than 45,700 notice packets have been mailed to potential Class Members and summary notice was published in accordance with the Court's order preliminarily approving the settlement.  (ECF No. 55).  *See* Supplemental Declaration of Adam D. Walter on Behalf of A.B. Data Ltd. ¶6 ("Supp. Mailing Decl."), submitted herewith as Exhibit 1 to the Reply Declaration of Jonathan Gardner ("Gardner Reply Decl."), dated May 2, 2014.

The April 18, 2014 deadline for objections and exclusions has passed and Lead Counsel has received only two requests for exclusion, representing 40.43 shares of Aéropostale common stock; one ill-founded objection submitted by a "professional objector" who objected to the sufficiency of the Notice and the attorneys' fee request ("Turkish Objection") (ECF No. 62); and one objection submitted by an individual investor ("Opp Objection") to the definition of the Class and the fee request (Gardner Reply Decl. Ex. 2).[1]  No Class Member has objected to the merits of the Settlement nor to Counsel's or Lead Plaintiff's expense request.  Additionally, no public pension fund or other institutional investor has sought exclusion or lodged an objection.

## ARGUMENT

### I. THE CLASS REACTION STRONGLY SUPPORTS THE REQUESTED RELIEF

"[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).  As the Second Circuit reasoned in *Wal-Mart Stores*, "'If only a small number of objections are received, that fact can be viewed as

---

[1] Mr. Opp does not state how many shares of common stock he purchased and the Turkish Objection was submitted on behalf of Donald Pierson II, who states he purchased 200 shares. Neither counsel nor the claims administrator have received a copy of Pierson's claim form.

indicative of the adequacy of the settlement.'"  396 F.3d at 118 (citation omitted).  Not a single Class Member has objected to the substance of the Settlement.

Similarly, the fact that there have been two exclusion requests also supports the Court's final approval.  *See*, *e.g.*, *In re AIG, Inc*. *Sec. Litig.,* No. 04 Civ. 8141, 2010 WL 5060697, at *2 (S.D.N.Y. Dec. 2, 2010) *aff'd*, 452 Fed. App'x 75 (2d Cir. 2012) (noting the "extremely positive" reaction to the settlement where there were "only 105 requests for exclusion received, out of which 61 were timely and valid").  Here, the Claims Administrator has received a total of two valid requests for exclusion (representing only 40.43 shares of common stock).

In addition, there has not been a single objection to the proposed Plan of Allocation, providing additional strong support for its approval.  *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007).

With respect to the fee request, as discussed below, the two objections are not well-founded and should be rejected by the Court.  In any event, the fact that only two individuals have been critical of the fee request is "powerful evidence that the requested fee is fair and reasonable."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 594 (S.D.N.Y. 2008)(CM).

## II.    THE OBJECTIONS SHOULD BE REJECTED

### A.    The Turkish Objection Is Baseless and Should be Viewed with Skepticism

Attorney Forrest S. Turkish is a serial objector.  In addition to the objection filed here, Mr. Turkish has submitted similar objections in at least 12 other recent class actions.[2]  Indeed, in

---

[2] *See, e.g.*, *In re Schering-Plough Corp. / Enhance Sec. Litig.*, No. 08-397 (D.N.J. Aug. 5, 2013), ECF No. 431; *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177 (D.N.J. Aug. 5, 2013), ECF No. 338; *In re Sanofi Aventis Sec. Litig.*, No. 1:07-cv-10279 (S.D.N.Y Dec. 16, 2013), ECF No. 273; *Ronald Monk v. Johnson & Johnson et al.*, No. 10-4841 (D.N.J. Oct. 24, 2013), ECF No. 119; *In re Citigroup Inc. Sec. Litig.*, No. 07-cv-09901 (SHS) (S.D.N.Y. Mar. 15, 2013), ECF No. 226; *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,*No. 09-MDL-2058 (PKC) (S.D.N.Y. Mar. 5, 2013), ECF No. 842; *In re Am. Int'l Grp. Sec. Litig.*, Master File No. 04-Civ-8141 (DAB) (S.D.N.Y. Mar. 6, 2013), ECF No. 671; *EOFF v. Sprint Nextel Corp.*,
*(Cont'd)*

2013 alone, he filed eight objections.  In virtually every one of these cases, the court overruled the objections and then Mr. Turkish or Darrel Palmer,[3] another well-known professional objector who frequently takes over for Mr. Turkish, filed notices of appeal for appeals that either were never perfected or were voluntarily dismissed.[4]

"Professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010).  Indeed, the "goal" of professional objectors like Mr. Turkish, is "to hijack as many dollars for themselves as they can wrestle from a negotiated settlement." *In re UnitedHealth Grp Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009).  Lead Plaintiff respectfully submits that, under the circumstances here, the Court should view the Turkish Objection with great skepticism.

        **1.**     **The Class Was Provided with the Best Notice Practicable**

Turkish first argues, without any legal support, that the Court-approved notice program for the proposed Settlement and request for attorneys' fees was insufficient, because certain documents did not appear on the Settlement website.  *See* ECF No. 62 at 3-4.

The notice program here, involving mailed individual notice and a published summary notice, followed the gold standard for class action notification that has been approved by

---

2:10-cv-01190-MCA (D.N.J. Oct. 26, 2012), ECF No. 44; *In re Tremont Sec. Law, State Law & Ins. Litig.*, Master File No. 08-cv-11117 (TPG) (S.D.N.Y. May 11, 2011), ECF No. 464; *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, Civil Action No. 1:07-cv-00909-RJS (S.D.N.Y. Mar. 3, 2011), ECF No. 76; *Brody v. Merck & Co.*, No. 12-cv-4774 (D.N.J. Jan. 31, 2013), ECF No. 27; *In re Ins. Brokerage Antitrust Litig.*, No. 04-cv-5184 (D.N.J. Aug. 30, 2011), ECF No. 1894.

    [3] Mr. Turkish has worked with Mr. Palmer in at least **ten** of the recent class action settlements referenced in footnote 2.  *See, e.g.*, *Schering-Plough*; *Merck*; *Sanofi*; *Bank of Am. Corp*; *Am. Int'l Grp.*; *Tremont*; *LG Philips*; *Brody*; *Ins. Brokerage*; *Monk*.

    [4] Interestingly, on April 17, 2014 this happened in *Schering-Plough*, No. 08-397 (D.N.J.) and No. 13-4328 (3d Cir.), where Lead Counsel represents the class and requested that the Third Circuit dismiss the appeal filed by Mr. Turkish and Mr. Palmer for failure to pay a $50,000 appeal bond related to a fee objection.  The Third Circuit agreed and dismissed the appeal. (D.N.J. ECF No. 449).

countless courts. *See, e.g., In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D 362, 358 (S.D.N.Y. 1996) (MP) *aff'd,* 107 F.3d 3 (2d Cir. 1996) (reiterating that individual mailed notice to those identified and publication notice was reasonable and discussing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). While Lead Counsel recognizes that web posting of motion papers is beneficial, and regrets the oversight that led to them not being posted earlier here, web posting is an additional convenience for those who have access to the internet—not a requirement of due process or the PSLRA. Turkish tacitly concedes that actual notice of the motions is not required in his discussions of Rules 23(e)(1) and 23(h). Notice must be provided, "in a reasonable manner." ECF No. 62 at 3, 4. The Advisory Committee notes cited also focus on *filing* with the Court, "the court should provide sufficient time after the full fee motion *is on file t*o enable potential objectors to *examine* the motion." *Id* at 4.

The individual mailed Notice, which was contemporaneously posted on the settlement website and Lead Counsel's website, provided all of the required detail concerning the Settlement, the Plan of Allocation, and the request for fees and expenses. With respect to fees, the Class was told the maximum amount that would be requested (counsel is actually requesting fewer expenses), the cost per share, that counsel has not received any compensation despite its considerable time and effort, and a summary of the work conducted. *See* ECF No. 61-3 at 2-4. Further, Lead Counsel's motion papers were filed with the Court and made accessible to the public via the Clerk's office and the Court's electronic filing system (PACER). If a Class Member could not retrieve the documents from the Clerk or PACER, the Notice specifically informed Class Members that information could be retrieved by contacting the Claims Administrator or Lead Counsel and provided telephone numbers and email addresses. Neither

the Claims Administrator nor Lead Counsel received any requests for motion papers from Class Members or Mr. Turkish.  Supp. Mailing Decl. ¶10; Gardner Reply Decl. ¶3.

Mr. Turkish's argument that the notice program failed to satisfy the requirements of Rule 23 is belied by the very fact that he reviewed the motion papers.  Indeed, in response to an objection filed by Mr. Turkish in Lead Counsel's *Schering* case, the court rejected the argument and held: "the filing of the [ ] Objection itself demonstrates the Motion for a Fee Award was accessible to Class Members."  *In re Schering-Plough Corp. Enhance Sec. Litig*. Nos. 08-397, 08-2177, 2013 WL 5505744, at *35 (D.N.J. Oct. 1, 2013).

### 2. The Turkish Objection to the Attorneys' Fee Request Is Unfounded

Mr. Turkish contends that the requested fee is excessive and attempts to cast doubt on the reliability of Lead Counsel's lodestar calculation.  ECF No. 62 at 4.  Rather than addressing the numerous cases cited by Lead Counsel to demonstrate that the fee is justified, ECF No. 60 at 6-7, Turkish focuses primarily on one narrow study, arguing that because it does not purportedly support the 33% fee request, the request is "presumptively unreasonable."[5]  ECF No. 62 at 5.

First, there is of course no requirement within the Second Circuit of statistical proof of comparability to support a fee request.  That said, with respect to the substance of the Fitzpatrick study, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010) ("Fitzpatrick Study"), the study reviews all class action settlements in 2006 and 2007.  *See* Gardner Reply Decl. Ex. 3.  It acknowledges a broad range of percentage method fee awards, from 3% to 47%, with "[m]ost fee awards [being] between 25 percent and 35 percent."  *See* Ex. 3 at 833.  The Fitzpatrick Study also found that lodestar multipliers ranged from 0.7 to 10.3, with a 1.34 median and 1.65 average (significantly higher than the "multiplier" of 0.7

---

[5] Turkish's factually inaccurate argument concerning the relationship between the requested fee and the recovery per share is discussed below together with the Opp Objection.

5

requested here). *Id*. at 834. Leaving aside the fact that the study is limited to two years of data,[6] Mr. Turkish fails to recognize that the figures he cites are averages and medians—thus some fees will be significantly lower than these figures and some will be significantly higher, with 33% being represented. With respect to the data point for settlements of $10-15.2 million, Professor Fitzpatrick also notes a standard deviation of 6.4%, meaning that the median could actually be closer to 31%. Ex. 3 at 839. Accordingly, it is respectfully submitted that overall the Fitzpatrick Study is supportive of the reasonableness of the fee request here.

Importantly, for purposes of this Court's review of the fee request, the study does not distinguish between cases that settle early in the litigation process or those that proceed through class certification, merits and/or expert discovery, and onto trial, or the risks of litigation that may warrant a higher or lower fee award.[7] These are the individual circumstances that need to be weighed by a reviewing court and why "comparable cases" is just one factor. Indeed, as the Second Circuit emphasized in *Goldberger v. Integrated Resources Inc.*, it is the application of the relevant factors and the unique circumstances of each case, that a court should utilize in assessing the reasonableness of a fee award. 209 F.3d 43, 53 (2d Cir. 2000).

Second, Mr. Turkish posits that Lead Counsel's hourly rates, and thus lodestar calculation, are questionable in order to cast doubt on the reasonableness of counsel's fee application. *See* Objection at 5. This argument is completely without merit and should be rejected. As a threshold matter, it seems that Mr. Turkish must have recycled this argument from another objection filed in another case, without regard to the facts of this one. He states that the

---

[6] 2006 included 8 settlements in excess of $1 billion (which would tend to have lower percentage fees), one of which was the $6.6 billion *Enron* settlements where fees were less than 10%. Fitzpatrick Study at 826 & 830.

[7] These factors were discussed in detail in Lead Counsel's memorandum and declaration in support of the motion for fees and expenses (*see, e.g.*, ECF Nos. 60 at 10-16; 61 ¶¶36-92) and have not been challenged by Mr. Turkish.

fee motion does not disclose hourly rates or provide support for the rates being comparable to prevailing rates, but it plainly does. Both the memorandum of law and main declaration in support explain that the hourly rates of Plaintiffs' Counsel "range from $640 to $875 for partners, $550 to $725 for of counsels, and $335 to $665 for other attorneys." ECF No. 60 at 18; ECF No. 61 ¶121. Lead Counsel also explained that these rates are commensurate with prevailing market rates based on (1) data compiled annually by Labaton Sucharow relating to fee applications in bankruptcy proceedings by firms that regularly defend securities class actions and (2) the *National Law Journal*'s annual survey of law firm billing rates. ECF No. 61 ¶121. The assertion that Lead Counsel must provide detailed billing records is inconsistent with well-established law, and Turkish raises no substantive issues concerning any of the work done by counsel or the number of hours reported. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009) (where lodestar is used as cross check, "it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reasonably expended was reasonable"). More than half a dozen courts across the country have approved of Lead Counsel's 2013 billing rates and have granted fee awards at the same rates the firm has submitted here. Gardner Reply Decl. ¶5.

      Mr. Turkish heavily relies on *In re Citigroup Inc. Securities Litigation*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013), where the court approved the rates of partners, of counsels, and associates that are similar to those here, and found them within the range accepted in this district. *See id*. at 394. *Citigroup* did focus on the rates of "contract" attorneys and held that the appropriate rate for these attorneys should be $200. However, the rulings in *Citigroup* do not support the Turkish objection. First, contract attorney time in *Citigroup* was $28.6 million, accounting for approximately **56%** of the total lodestar. Staff attorney time in this Action is $2.22 million,

7

accounting for *32%* of the total lodestar. ECF No. 60 at 20. Second, the original multiplier in *Citigroup* was 1.9 and after the Court reduced the contract attorney rate, along with other reductions, the multiplier was 3.9. In this Action, the requested attorneys' fee represents a *negative* multiplier of 0.70. Applying a $200 per hour rate for all staff attorney work would result in a lodestar of still almost $6 million and a negative multiplier of 0.85. Even if *all* of the staff attorney work were removed from the lodestar calculation, the resulting multiplier would be a modest *1.03*.

### 3. The Requested Fee in Relation to Recovery Per Share

Finally, the Turkish Objection claims that the "settlement compensation of $0.50 per share offered to Class Members is extremely low in comparison to the damages of as much as $12.34 per share alleged by Plaintiffs." Turkish Objection at 5. This calculation of $12.34, however, is not a calculation of damages. To the contrary, $12.34 is the gross drop in stock price between the close of business on March 11, 2011 (the beginning of the Class Period) and August 18, 2011 (the end of the Class Period). *See* Complaint ¶19, ECF No. 21. Investor damages, however, require proof of loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Once loss causation is established, damages estimation remain "a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and [share]s 'true' value absent the alleged fraud." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (citation omitted). The fact that Mr. Turkish assumed his was a proper calculation of damages demonstrates the baselessness of the objection. As previously set forth in Lead Plaintiff's opening papers, the maximum damages recoverable by the Class are estimated to be approximately $163 million (or $5.48 per allegedly damaged share, assuming 100% recovery for all four alleged corrective disclosure dates) to $72 million (or $2.42

per allegedly damaged share).  The Settlement represents a recovery in the range of approximately 9.2% to 21% of estimated damages, a very good recovery for the Class.

### B.     The Opp Objection Should Be Rejected

Mr. Opp takes issue with the start date of the certified Class Period, the fact that only *purchasers* during the Class Period are Class Members, and that the requested attorneys' fee is more than 4.8%, his calculation of the percentage of recovery that the Settlement provides.  His objection should be rejected.

First, the Class Period, which is the same as that certified by the Court for purposes of the litigation, rightly starts on March 11, 2011, the date when the Company for the first time issued earnings guidance for 1Q 2011.  *See* Complaint ¶¶ 79-82, ECF No. 21.  This guidance is alleged to be false and misleading because by that time, the Company was allegedly aware of the inventory overhang from the poor performing 2010 Fall and Holiday lines coupled with the fact that the Spring and Summer 2011 lines had already been ordered in similar styles.   Lead Plaintiff did not, and could not have, allege that the Company's earnings guidance for the previous quarter, 4Q 2010, or full year 2010 were false and misleading based on the alleged fraud because (1) this guidance was issued before the impact of the Fall and Holiday 2010 was known and (2) this guidance was not inaccurate.   At bottom, the Defendants were not alleged by Lead Plaintiff to have made any false or misleading statements prior to the start of the Class Period.  *Id*.  Additionally, the start and end of a Class Period has nothing to do with the PSLRA 90 day look-back provision mentioned by Mr. Opp, which is simply a mathematical application to limit damages.

To the extent Mr. Opp is objecting to the fact that holders of Aéropostale common stock are not Class Members, this argument is also not well-founded.  The federal securities laws do not recognize a claim on behalf of holders of the securities at issue (as opposed to security

"purchasers"). *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 559 (S.D.N.Y. 2005) ("'Because of the inherent difficulty of proving reliance and damages in such actions, as well as the potential for non-meritorious suits brought merely to extract a settlement,' it has been long established that holders of securities cannot bring federal securities law claims.")(citation omitted).

With respect to Mr. Opp's argument that Lead Counsel's fee should be limited to 4.8% of the Settlement Amount, as noted above we submit that the estimated recovery to the Class is far greater than 4.8% and fully supports the fee request. (Mr. Opp, like Mr. Turkish, incorrectly calculated damages based on gross price drops between the start and the end of the Class Period.) Further, as this Court is aware, the federal securities laws are remedial in nature and private lawsuits should be encouraged. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Specifically, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005). It is respectfully submitted that private attorneys, like counsel here, should be encouraged to take the risks required to represent those who would not otherwise be protected from securities fraud—risks that are not akin to those undertaken by value investors like Mr. Opp. Accordingly, an award of the fee requested herein would be fully consistent with these important public policy considerations.

## **CONCLUSION**

For the reasons set forth herein and in Lead Plaintiff's and Lead Counsel's previous submissions, the Court is respectfully requested to approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate and to approve the request for attorneys' fees and reimbursement of litigation expenses (including those incurred by Lead Plaintiff).

Dated:  May 2, 2014 					Respectfully submitted,

**LABATON SUCHAROW LLP**

By: */s/ Jonathan Gardner*
Jonathan Gardner
Eric J. Belfi
Mark Goldman
Carol Villegas
140 Broadway
New York, New York 10005
Telephone:	(212) 907-0700
Facsimile:	(212) 818-0477

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2014, I caused the foregoing MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MOTION FOR ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES to be served electronically on all ECF participants.

s/ *Jonathan Gardner*
JONATHAN GARDNER