UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>AEROPOSTALE, INC., THOMAS P. JOHNSON and MARK D. MILLER<br><br>    Defendants. | 11-CV-07132 (CM) (GWG)<br><br><u>CLASS ACTION</u> |

**OBJECTOR'S RESPONSE TO LEAD COUNSEL'S SUBMISSION CONCERNING TIME SPENT RESPONDING TO PIERSON OBJECTION**

Lead Counsel's Submission Concerning Time Spent Responding to Objection (Dkt. No. 71) highlights the ad hominem nature of the attacks against this objector found in Lead Counsel's Reply (Dkt. No. 64) and supports the arguments against sanctions.  Lead counsel calls it the "Turkish Objection" but actually it was Don Pierson's Objection.[1]

**A.**  **The Time Spent Responding reveals a goal of discrediting objector's counsel.**

Lead Counsel's Submission Concerning Time Spent indicates that discrediting objector's counsel was the primary goal.

- Of the total 112.1 hours Lead Counsel claim to have devoted to responding to the Objection, approximately half (49.8%, or 55.8 hours) of the time claimed was spent "compiling background information about Mr. Turkish to put the objection into proper perspective."  (Dkt. 71, page 2)

- Approximately 38.9 hours, or 34.7 percent of the hours spent on the motion were devoted to arguments concerning the request for attorneys' fees.

---

[1] The court might note no accusations were aimed at the objector; a fellow jurist with a stellar reputation.

- Only 17.4 hours, or 15.5% of the hours spent on the Reply Memo, were devoted to notice issues raised in the Motion.

The bulk of Lead Counsel's time was spent on efforts to discredit objector's counsel, followed closely by protecting defending their fee request; consideration of the notice issues raised in the objection ranked a distant third.  Lead counsel provided a classic example of the inherent conflict between class counsel and class members once the race for fees begins: rather than being concerned with the notice/due process issues, class counsel focused on protecting their fees and researching objections in unrelated lawsuits.  In 28 years of practice, Mr. Turkish has filed 12 objections.  Lead counsel has filed hundreds if not thousands of lawsuits, many, probably hundreds, dismissed without recovery, billions recovered in fees.  Both are irrelevant anecdotes.

Hours spent compiling background information about objector's counsel cannot support sanctions.  As noted in *In re Kunstler*, 914 F.2d 505, 522 - 523 (4th Cir. 1990), in determining the proper Rule 11 sanctions, "[o]nly attorney time which is in response to that which has been sanctioned should be evaluated."  *Id.  Accord. Izadpanah v. Gross*, 135 F.3d 769, fn. 4 (4th Cir. 1998)  ("[o]nly attorney time which is in response to [the sanctioned conduct] should be evaluated." *Izadpanah*, at 769, fn. 4, quoting *In re Kunstler*).

But it is not just the percentage of time devoted to background research on objector's counsel that is improper; the amount of time claimed is also excessive in light of the scanty results obtained.  The findings of the background research on Mr. Turkish are encapsulated in six lines of text in the Reply Memorandum (pages 2-3), and three footnotes (footnotes 2 – 4).  The information points to work that counsel performed for other objectors.  The hours claimed for researching this information are not believable, as this information can easily be obtained through the court's Pacer system with one or two quick searches.  The information in footnote

four, concerning In re Schering-Plough Corp. / Enhance Sec. Litig., No. 08-397 (D.N.J. Aug. 5, 2013) was already known to attorneys at Labaton Sucharow, as they served as Lead Class Counsel in the referenced litigation.  This is prominently posted in the News and Events section of the firm's website, available at http://www.labaton.com/en/about/press/Labaton-Sucharow-Secures-473-Million-Settlement-Against-Schering-Plough-Corporation.cfm.  In light of the limited and easily available nature of the information in the Reply Memorandum concerning Turkish – information largely already known by Lead Counsel – it is not credible that Labaton Sucharow attorneys devoted 55.8 hours to doing background research to formulate a response to the Turkish Objection.

As noted in *In re Kunstler*, "The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims."  *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990), *citing White v. General Motors Corp*. 908 F.2d at 684.  Here, there was excessive researched counsel's background undeserving of compensation.

B.    **The time devoted to defense of the attorneys' fee award should not be considered.**

"Attorney time which is attributed to responding [  ] to claims within a pleading which do not merit sanctions, should be excluded from consideration."  *Kunstler*,  914 F.2d at 523.  As noted in our response to the court's Order Approving Settlement, the fees requested were high (or "at the high end of the range of other percentage fee awards within the Second Circuit in comparable settlements", as stated in the Order).  Questioning of the attorneys' fees, particularly the work performed by lower level staff attorneys, is reasonable and reflects concerns recently expressed in this district court in *In Re Citigroup Inc. Securities Litigation*, 965 F.Supp.2d 369 (2013).  Class Counsel cite to older cases which did not require detailed billing records in approving class action settlements.  In light of the holding in *In Re Citigroup*, however, courts

may well find it appropriate to more closely scrutinize hourly billing rates in connection to the work performed.  This is a non-frivolous argument made to protect class members' interests.

Counsel also devoted substantial time to analysis of a study of class action settlements cited by this objector, Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010).  This portion of the Reply Memorandum misrepresents both our comments regarding this study and Professor Fitzpatrick's findings.  Lead Counsel states: "Mr. Turkish fails to recognize that the figures he cites are averages and medians—thus some fees will be significantly lower than these figures and some will be significantly higher, with 33% being represented."  We noted both median and mean attorneys' fees relevant to the settlement.  See Objection, page 5, noting "the mean attorney fee award in the Second Circuit is 23.8%, while the <u>median</u> award is 24.5%. For Securities Class Action cases, the <u>mean</u> award for attorneys' fees in all circuits is 24.7%, while the median is 25% . . .  [and] . . . For settlements ranging from $10 million to $15.2 million . . . the <u>mean</u> percentage award is only 24.8%, while the <u>median</u> award is 25%."  Rather, it is Lead Counsel who misrepresent the Fitzpatrick study.    Fitzpatrick's study found that "For settlements ranging from $10 million to $15.2 million . . . the median award is 25%."  (As noted in the Objection.)  Class Counsel points out that "Fitzpatrick also notes a standard deviation of 6.4%".  See Fitzpatrick, table 10.  This is correct, however Lead Counsel's suggestion that this means "the median could actually be closer to 31%" – is incorrect and misleading.  The median, according to Fitzpatrick, is what Objector stated – 25%.  The standard deviation shows how much variation or dispersion from the average exists, but it is not just a guess about how far off the median is and using Lead Counsel's approach, that reasoning might just as easily suggest the correct median is 18.6% rather than 31%.  Lead Counsel should not be awarded for their efforts in developing this analytically

flawed analysis of Objectors' assertions – assertions which faithfully represented Fitzpatrick's findings.

C.     **Lead Counsel devoted little time responding to the Notice issues.**

Lead Counsel claim to have followed the "gold standard" in class action notification procedures, while at the same time acknowledging their "oversight" in failing to post relevant documents on the settlement website.  The cases Lead Counsel cite to support their claims to have achieved the "gold standard" in class notification date from 1950 to 1996.  Lead Counsel cited *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 164 F.R.D 362, 358 (S.D.N.Y. 1996), *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) to support this claim.  Respectfully, the internet has changed things;  the ease of providing documents on a settlement website has changed what qualifies as "the best notice that is practicable under the circumstances" as required by Fed. R. Civ. P. 23(c)(2)(B).  Counsel may have devoted less time to addressing the issues raised by the Objection because they immediately realized they had erred in failing to post relevant documents on the settlement website.

However, Class Counsel should have devoted more time to analysis of the due process and notice issues raised by this Objector.  *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) may not be binding in this Circuit, but it raises important due process issues that will no doubt figure prominently in class action settlements going forward.  It highlights that courts have routinely ignored the requirements of Rule 23(h) in approving attorneys' fees without providing Class Members adequate opportunity to review the attorneys' fee motions.   Regarding attorneys' fee motions, Rule 23(h) states "Notice of the motion must be served on all parties and, for motions by class counsel, ***directed to class members in a***

5

*reasonable manner*."  (emphasis added) The advisory committee notes to the 2003 amendments state "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion"  and suggest that in appropriate cases courts should permit "objector discovery relevant to the objections".   Ignoring these issues, Lead Counsel's response suggests that filing was the Advisory Committee's only concern.  This is overly simplistic; as noted, the advisory committee also suggested objectors should conduct discovery related to the fee request.

Finally, Class Counsel claim that since this Objector acquired relevant documents through the court's website, Lead Counsel provided adequate notice to the Class.  The Fee Motion and related Gardner Declaration were 366 pages.  Accessing these documents through Pacer has a cost and for Class members without direct Pacer access, obtaining documents is a serious challenge.  This approach is not the "best practicable notice" and does not satisfy the requirements of Rule 23.  Unrepresented class members should not be disadvantaged in this way. This approach reflects Lead Counsel's lack of concern with Class Members basic right to understand the nature of the claims they are releasing and the fees being paid to the attorneys who purport to represent them.

D.      **Consideration of the time to respond is only the starting point.**

The Fourth Circuit has stated "Rule 11 should not blindly be used to shift fees" and "the least severe sanction adequate to serve the purposes of Rule 11 should be imposed."  *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).  Rule 11 is aimed at deterrence; it is not a fee shifting statute.  In *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) the court noted that "The amount of expense borne by opposing counsel in combatting frivolous claims may well be an appropriate factor for a district court to consider in determining whether a monetary sanction should issue

and if so, in what amount. However, the primary, or "first" purpose of Rule 11 is to deter future litigation abuse." Factors the court should consider in determining an appropriate sanctions award were enumerated by the Tenth Circuit in White v. General Motors Corp., 908 F.2d 675 (10th Circuit, 1990). These factors include (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation. The unreasonableness of the fees, and inconclusiveness of any violation, suggest that any sanctions imposed should be minimal.

In Chambers v. NASCO, Inc., 501 U.S. 32, 42-44 (1991), the Supreme Court affirmed a court's "inherent authority to sanction bad-faith conduct," but also noted that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." In that case the conduct being sanctioned included acts of fraud, multiple filings of false and frivolous pleadings, and other tactics imposing massive expense, delay, oppression, and harassment, and included filing false pleadings before both the district court and the FCC. See Id., at 35-40. The conduct at issue was extremely egregious, although Justice Scalia dissented in that case, finding that the court had exceeded its authority in sanctioning conduct outside the specific litigation before the court. In his dissent, Scalia noted "I disagree, however, with the Court's statement that a court's inherent power reaches conduct "beyond the court's confines" that does not " 'interfer[e] with the conduct of trial,' " Scalia, dissenting, 501 U.S. at 60. Regarding a court's inherent authority, Scalia further noted, "Congress may prescribe the means by which the courts may protect the integrity of their proceedings. A court must use the prescribed means unless for some reason they are inadequate." Justice Scalia's position regarding the limits of a court's inherent sanctioning authority were further developed in Law v. Siegel, 134 S.Ct. 1188, 1194 (2014). In his opinion, Justice Scalia noted "A bankruptcy court has statutory authority to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of the

Bankruptcy Code. (citations omitted)  And it may also possess "inherent power ... to sanction

'abusive litigation practices.' " (citations omitted)  But in exercising those statutory and inherent

powers, a bankruptcy court may not contravene specific statutory provisions."  Law v. Siegel, at

1194 (citations omitted).

**E.      Deterrence is an improper goal in class action litigation.**

      Important public policy goals support class members' right to easy access to any

documents relevant to the fairness of a settlement and the right to object to class action

settlements.  Class members, including Mr. Pierson have a right to engage experienced attorneys

and stand up for individual investors.   The objection was in response to the mandated Rule 23

invitation to object, it raised valid legal arguments and sanctions are not warranted.  Lead

Counsel's Submission Concerning Time Spent Responding and related fee request should be

denied.


Dated:   May 30, 2014                    By: /s/ Forrest S. Turkish_____
                                    Forrest S. Turkish (FT1197)
                              Law Office of Forrest S. Turkish
                              595 Broadway
                              Bayonne, NJ 07002
                              Phone: (201) 339-8866
                              Fax: (201) 339-8456
                              Email: fsturkish@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 30, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of New York by using the USDC CM/ECF system.

I certify all participants registered CM/ECF users that service will be accomplished by the USDC CM/ECF system, including but not limited to:

<u>    /s/ Forrest S. Turkish     </u>
Forrest S. Turkish