## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 11-CV-7132 (CM)(GWG) |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| AÉROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER, | ) ) ) | |
| Defendants. | ) ) ) | |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN APPEAL BOND

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

I.     THE COURT HAS AUTHORITY TO REQUIRE OBJECTORS TO FILE AN
APPEAL BOND ............................................................................................................ 4

    A.    Applicable Standards under Rule 7 ................................................................... 4

    B.    Application of Relevant Factors Supports an Appeal Bond Here ...................... 5

        1.    The Court Resoundingly Rejected the Objector's Arguments
Below ..................................................................................................... 5

        2.    The Appeal Is Vexatious and Was Filed in Bad Faith .......................... 6

        3.    Financial Ability .................................................................................... 8

    C.    Costs Covered by the Appeal Bond .................................................................. 8

        1.    The Court Should Require at Least a $3,000 Bond for  the Costs of
the Appeal .............................................................................................. 8

        2.    The Court Should Require a $15,000 Bond for the Incremental
Expenses of Administering the Settlement During the Appeal .................. 9

CONCLUSION ......................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adsani v. Miller*,
   139 F.3d 79 (2d Cir. 1998)............................................................................................5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. 02-5575(SWK), 2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007).....................................6, 8

*Baker v. Urban Outfitters, Inc.*,
   No. 01 CV 5440 LAP, 2006 WL 3635392 (S.D.N.Y. Dec. 12, 2006) .............................6, 8, 9

*In re Bayer Corp. Combination Aspirin Prods. Marketing and Sales Practices Litig.*,
   No. 09-md-2023 (BMC), 2013 WL 4735641 (E.D.N.Y. Sept. 3, 2013) ...............................5

*Berry v. Deutsche Bank Trust Co. Am.*,
   632 F. Supp. 2d 300 (S.D.N.Y. 2009).............................................................................9

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 4656 (C.D. Cal. Dec. 5, 2005) ......10

*In re Cardizem CD Antitrust Litig.*,
   391 F.3d 812 (6th Cir. 2004) .......................................................................................10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)...............................................10

*In re Currency Conversion Fee Antitrust Litig.*,
   No. M 21-95, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ................................................4, 9

*In re Gen. Elec. Co. Sec. Litig.*,
   No. 09 Civ. 1951(DLC), 2014 WL 534970 (S.D.N.Y. Feb. 11, 2014) .....................4, 5, 9, 10

*In re Initial Public Offering Sec. Litig.*,
   728 F. Supp. 2d 289 (S.D.N.Y. 2010)...........................................................................4, 8, 9

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.RD. 124 (S.D.N.Y. 1999) .................................................................................5, 9

*In re Nutella Mktg. and Sales Practices*,
   No. 11-1086 (FLW), 2012 WL 6013276 (D.N.J. Nov. 20, 2012) .........................................10

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
   No. 2:06-cV-00225-PMP-PAL, 2010 WL 786513 (D.Nev. Mar. 8, 2010)............................10

**Statutes and Rules**

28 U.S.C. § 1920..................................................................................................8

Fed. R. App. P. 7...........................................................................................1, 4, 9, 11

Fed. R. App. P. 39................................................................................................8

Fed. R. Civ. P. 23...............................................................................................6

Lead Plaintiff, the City of Providence ("Providence" or "Lead Plaintiff"),[1] respectfully

submits this memorandum of law in support of its motion for entry of an order requiring Donald

Robert Pierson ("Pierson"), represented by attorney Forrest S. Turkish ("Turkish") before this

Court and now Joseph Darrell Palmer ("Palmer") before the United States Court of Appeals for

the Second Circuit, (collectively, the "Objector"), to post a bond  pursuant to Federal Rule of

Appellate Procedure 7 ("Rule 7") in order to proceed with his appeal of this Court's May 9, 2014

Memorandum Opinion and Order Granting Lead Plaintiff's Motions for Final Approval of Class

Action Settlement; Plan of Allocation; and Attorneys' Fees and Expenses ("Memorandum

Opinion") (ECF No. 66).

## PRELIMINARY STATEMENT

Palmer and Turkish are serial objectors, intent on holding up the finalization of the

Settlement and distribution to Class Members, likely in order to extract a payment from Lead

Counsel in exchange for discontinuing the appeal.  The Objector's meritless appeal will

accomplish nothing but will impose thousands of dollars in additional administrative expenses

upon the Class and will delay the distribution of settlement funds to thousands of Class Members

who have been waiting since May 2011, when the corrective disclosures concerning the

Defendants' alleged wrongful conduct first came out, to recover their losses.

As set forth more fully below, a bond in this case is warranted.  First, this Court has

thoroughly examined the Objector's arguments and has already found them to be devoid of any

merit.  Second, the Court can consider the fact that Mr. Turkish and Mr. Palmer are professional

---

[1] All capitalized terms not defined herein have the same meanings set forth in the Stipulation and
Agreement of Settlement dated January 29, 2014 (the "Stipulation"), filed with the Court on January
29, 2014.  ECF No. 54-1.

objectors lodging generic and legally incorrect objections.   Third, there is nothing to suggest that the Objector does not have the financial resources to post a bond.  Accordingly, for the reasons set forth below, Lead Plaintiff respectfully requests that this Court impose an appeal bond in the amount of at least $18,000.

**BACKGROUND**

On January 29, 2014, after more than two years of litigation, the Parties signed the Stipulation resolving Lead Plaintiff's and the Class's claims for $15 million dollars.  On January 31, 2014, the Court entered an order preliminarily approving the Settlement and ordering that notice be sent to members of the Class.  ECF No. 55.

Following the extensive Court-approved notice program, which included the mailing of 45,761 copies of the Notice to potential Class Members and nominees, there were only two objections, one of which was filed by the Objector and Mr. Turkish regarding narrow aspects of the Notice and Lead Counsel's request for attorneys' fees.  Notably, no public pension fund or other institutional investor objected to either the Settlement or Lead Counsel's request for fees and payment of expenses.

On May 9, 2014, the Court held a hearing to consider the fairness of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses.  *See* Transcript of Settlement Hearing ("Transcript"), Exhibit 1 to the Declaration of Jonathan Gardner in Support of Motion for an Appeal Bond ("Gardner Decl."), submitted herewith[2]   Neither the Objector nor his counsel appeared at the hearing.  At the hearing, the Court approved the Settlement and held that the attorney fee award requested by Lead Counsel was fair and reasonable under the

---

[2] All Exhibits referenced herein are annexed to the Gardner Declaration.

circumstances of the case.[3]  Transcript at 4-5.  Later that day, the Court issued the Memorandum

Opinion approving the Settlement and approving Lead Counsel's motion for a fee award of 33%

of the Settlement Fund.  ECF No. 66.

In its Memorandum Opinion, the Court rejected the Objector's arguments wholesale.

The Court also noted that Mr. Turkish is a "professional objector" who files a notice of appeal

when his objections are overruled.  *Id*. at 4.  The Court further noted that "[r]esponding to [the

objection] has wasted the time of Lead Plaintiff's counsel, and dealing with it has wasted the

time of this Court."  *Id*. at 5.  The Court also stated that his "objection is patently without merit"

and "[i]ndeed, it is patently frivolous."  *Id*. With respect to the objection to the request for

attorneys' fees, the Court stated that Mr. Turkish "does not know whereof he speaks" and that

the "court would be well advised not to listen to his suggestions."  *Id*. at 32.  The Court found

Lead Counsel's fee request reasonable, given, among other things, the advanced state of the

litigation, and noted that "Lead Counsel have earned the fee they request."  *Id*. at 20-21.

The Court also ordered Mr. Turkish to show cause as to why he should not be sanctioned

by the court.  *Id*. at 5.  Mr. Turkish submitted a brief on May 16, 2014 responding to the Court's

request.  ECF No. 70.  In its Order Closing Case, the Court stated, in part:

> It is not worth the time or the trouble to prepare an opinion
> addressing in detail the many self-serving statements and
> incredibly weak arguments (including the defense of his rote
> objection to "gold standard" notice to the members of the class) in
> Objector's response to the court's order to show cause –
> particularly in a circuit that routinely second-guesses sanctions
> awarded by a district court. . . [t]he Objectors with whom the court

---

[3] Commenting on Lead Counsel's fee and expense request, the Court stated: "I just want to say on the record, this is the rare case where I have no problem with the 33 percent fee.  And it is a rare case where I have no problem with a 33 percent fee, but that is because this case has actually been litigated."  Transcript at 4.

is more familiar are individuals who enter the fray in the hope of a handout. Mr. Turkish has given me no reason to conclude that he is not a member of that group.

ECF No. 74 at 1-2.

## ARGUMENT

## I.     THE COURT HAS AUTHORITY TO REQUIRE OBJECTORS TO FILE AN APPEAL BOND

### A.     Applicable Standards under Rule 7

Pursuant to Rule 7, a "district court may require an applicant to file a bond or provide other security in any form or amount necessary to ensure payment of costs of an appeal." *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2010). The function of an appeal bond is to secure the appellant's payment of appeal costs to a successful appellee. *See In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 WL 1253741, at *1 (S.D.N.Y. Mar. 5, 2010) ("The purpose of this rule is to protect the appellee from the risk of nonpayment by the appellant, if the appellee wins the appeal.").

When deciding whether to require an appellant to post an appeal bond, district courts consider several factors including: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *In re Initial Public Offering*, 728 F. Supp. 2d at 292 (internal quotation omitted). It is within the district court's discretion to determine the amount and nature of the bond. *Id*. Courts within the Second Circuit have imposed substantial appeal bonds on objectors appealing from the approval of a class action, based on the estimated costs of the appeal (*see, e.g., In re Initial Public Offering*, 728 F. Supp. 2d at 295; *In re Currency Conversion Fee,* 2010 WL 1253741, at *2-3) as well as the expenses incurred for administering the settlement during the appeal (*see, e.g., In re*

4

*Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951(DLC), 2014 WL 534970, at *10-11 (S.D.N.Y. Feb. 11, 2014)).

**B.     Application of Relevant Factors Supports an Appeal Bond Here**

A determination that an objector's argument lacks merit, and therefore is unlikely to succeed on appeal, weighs heavily in favor of requiring a bond.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999).  Indeed, "[a] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."  *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998).  This Court has thoroughly examined the Objector's arguments and has already found them to be meritless.  *See* ECF No. 66 at 4-5, 32; ECF No. 74 at 1-2.  Moreover, the Court's well-founded approval of the Settlement and fee request indicates that the appeal is meritless. *See, e.g., In re Bayer Corp. Combination Aspirin Prods. Marketing & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2013 WL 4735641, at * 1 (E.D.N.Y. Sept. 3, 2013) ("given the fact that the Court reached its conclusion that the Settlement Agreement is fair, adequate and reasonable, after extensive evaluation of all aspects of the Settlement Agreement, the Court finds that the appeal is likely without merit").

**1.     The Court Resoundingly Rejected the Objector's Arguments Below**

With respect to his challenge to the fee request, for being higher than the fee awards reported in a law review article, the Court noted that "all Mr. Turkish says is that the fee request is too high – indeed, is 'presumptively unjustified'."  Memorandum Opinion at 32.  The Court found that "[a]ctually, neither the Second Circuit not the Supreme Court has established any presumption at all concerning any particular level of fee award that would be unreasonable in a securities fraud class action – nor would such a 'presumption' be appropriate."  *Id.*  "I handily conclude that Lead Counsel have earned the fee they request."  *Id*. at 21.  Further, after

requesting an order to show cause from Mr. Turkish as to why he should not be sanctioned for filing a frivolous objection, the Court found that Mr. Turkish "has certainly not provided the court with any assistance in his evaluation of his objection to the proposed fee award." ECF No. 74 at 2.

With respect to his challenge to the notice to the Class, based on the fact that the final approval and fee motions were not posted on the settlement website, after finding that the notice program fully satisfied Fed. R. Civ. P. 23 and due process, the Court stated that Mr. Pierson's objection is "patently without merit" and "patently frivolous" and "dealing with it has wasted the time of this Court." ECF No. 66 at 5.

The Objector also superficially challenged the propriety of the Settlement by arguing that the proposed recovery of $0.50 per share was low when compared to the damages of as much as "$12.34" per share. ECF No. 62 at 5. As the Court found, however, Turkish's "apparent inability to distinguish between the gross drop in the stock price between the beginning and the end of the class period (which was originally alleged to be, and in fact was, $12.34) and the damages that could be recovered by any given plaintiff suggests that this court would be well advised not to listen to his suggestions." ECF No. 66 at 32. The fact that Mr. Turkish assumed his was a proper calculation of damages underscores the baselessness of the objection.

## 2.    The Appeal Is Vexatious and Was Filed in Bad Faith

Additionally, there is evidence of bad faith or vexatious conduct by the Objector. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-5575(SWK), 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007); *Baker v. Urban Outfitters, Inc.,* No. 01-5440, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006). As this Court is well aware, Mr. Turkish serially pursues

objections in class action settlements. In addition to the objection filed here, Mr. Turkish has

submitted similar objections in at least 12 other recent class actions.[4] Indeed, in 2013 alone, he

filed eight objections. In virtually every one of these cases, the court overruled the objections

and then Mr. Turkish or Mr. Palmer,[5] another well-known professional objector who frequently

takes over for Mr. Turkish, filed notices of appeal for appeals that either were never perfected or

were voluntarily dismissed.[6] In connection with this appeal, Mr. Palmer has filed a notice of

appearance with the Second Circuit and has filed a substitution of counsel notice, taking over for

Mr. Turkish. *See* 2d Cir. ECF No. 9-1.

---

[4] *See, e.g.*, *In re Schering-Plough Corp. / Enhance Sec. Litig.*, No. 08-397 (D.N.J. Aug. 5, 2013), ECF No. 431; *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177 (D.N.J. Aug. 5, 2013), ECF No. 338; *In re Sanofi Aventis Sec. Litig.*, No. 1:07-cv-10279 (S.D.N.Y Dec. 16, 2013), ECF No. 273; *Ronald Monk v. Johnson & Johnson et al.*, No. 10-4841 (D.N.J. Oct. 24, 2013), ECF No. 119; *In re Citigroup Inc. Sec. Litig.*, No. 07-cv-09901 (SHS) (S.D.N.Y. Mar. 15, 2013), ECF No. 226; *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,*No. 09-MDL-2058 (PKC) (S.D.N.Y. Mar. 5, 2013), ECF No. 842; *In re Am. Int'l Grp. Sec. Litig.*, Master File No. 04-Civ-8141 (DAB) (S.D.N.Y. Mar. 6, 2013), ECF No. 671; *EOFF v. Sprint Nextel Corp.*, 2:10-cv-01190-MCA (D.N.J. Oct. 26, 2012), ECF No. 44; *In re Tremont Sec. Law, State Law & Ins. Litig.*, Master File No. 08-cv-11117 (TPG) (S.D.N.Y. May 11, 2011), ECF No. 464; *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, Civil Action No. 1:07-cv-00909-RJS (S.D.N.Y. Mar. 3, 2011), ECF No. 76; *Brody v. Merck & Co.*, No. 12-cv-4774 (D.N.J. Jan. 31, 2013), ECF No. 27; *In re Ins. Brokerage Antitrust Litig.*, No. 04-cv-5184 (D.N.J. Aug. 30, 2011), ECF No. 1894.

[5] Mr. Turkish has worked with Mr. Palmer in at least ***ten*** of the recent class action settlements referenced in footnote 3. *See, e.g.*, *Schering-Plough*; *Merck*; *Sanofi*; *Bank of Am. Corp*; *Am. Int'l Grp.*; *Tremont*; *LG Philips*; *Brody*; *Ins. Brokerage*; *Monk*.

[6] On April 17, 2014 this happened in *Schering-Plough*, No. 08-397 (D.N.J.) and No. 13-4328 (3d Cir.), where Lead Counsel represents the class and requested that the Third Circuit dismiss the appeal filed by Mr. Turkish and Mr. Palmer for failure to pay a $50,000 appeal bond related to a fee objection. The Third Circuit agreed and dismissed the appeal. (D.N.J. ECF No. 449). In the instant appeal, Turkish and Palmer have also failed to vigorously pursue its perfection. They failed to file Forms C and D on time (they were due on June 20, 2014) and when the Forms were finally filed on July 14, 2014, they were defective and the Second Circuit issued a Notice of Defect. *See* 2d Cir. ECF No. 15. Additionally, the Objector was required to file a scheduling notification 14 days after filing Forms C and D, but failed to do so, and the Second Circuit gave him until August 25, 2014 to file the appeal brief. *See* 2d Cir. ECF No. 29.

### 3.    Financial Ability

There is nothing to suggest that the Objector does not have sufficient financial resources to post a bond.  *See In re Initial Public Offering*, 728 F. Supp. 3d at 293 (presuming objectors' ability to pay based on no evidence demonstrating they lack the ability to post a bond); *In re AOL*, 2007 WL 2741033, at *2 (objector "has submitted no financial information, so the Court concludes that it is not arguing that it lacks the financial ability to post a bond"); *Baker*, 2006 WL 3635392, at *1 (same).

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court order the Objector to post an appeal bond.

### C.    Costs Covered by the Appeal Bond

Lead Plaintiff seeks an appeal bond in the amount of at least $18,000, which includes taxable costs of the appeal and costs related to the administration of the Settlement during the pendency of the appeal – a period in which Lead Plaintiff is precluded from distributing the Settlement proceeds and instead must continue to process additional claims and assist Class Members.

### 1.    The Court Should Require at Least a $3,000 Bond for the Costs of the Appeal

The costs on appeal subject to a bond include those costs itemized in Rule 39 of the Federal Rules of Appellate Procedures and 28 U.S.C. § 1920.  *See* Fed. R. App. P. 39(e) (listing costs taxable by district court for benefit of prevailing party on appeal); 28 U.S.C. § 1920 (listing costs taxable by federal judges and clerks).  Courts have held that such costs include the costs of printing and reproducing briefs, appendices, records, and court reporter transcripts.  *See In re Initial Public Offering*, 728 F. Supp. 2d at 295 (requiring an appeal bond of $25,000 for taxable

costs of the appeal); *In re Currency Conversion Fee*, 2010 WL 1253741, at *2-3 (requiring an appeal bond of $50,000 for taxable costs of the appeal).

An appeal here will entail significant costs, including the costs of reproducing a lengthy brief and a supplemental appellate record that could be 1,000 pages. (Mr. Palmer did not consult with Lead Plaintiff before filing his appendix, which does not contain all relevant factual support, such as the exhibits to the Gardner Declaration in support of the settlement approval motion and fee motion, and briefing.)  Copying costs alone, taxed at the Second Circuit rate of $0.20 per page, $5 for binding, and $125 per cover, could amount to $3,000.  This is significantly less than the $8,000 to $12,000 for printing that an appellate service would likely charge.  Accordingly, Lead Plaintiff seeks at least a $3,000 bond for these taxable costs.  Courts in this District have determined that amounts much higher than the amount requested here were an appropriate amount of costs in appeal bonds.  *See, e.g., In re Currency Conversion Fee*, 2010 WL 1253741, at *2-*3 (appellant ordered to post appeal bond of $50,000 for appeal costs); *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 308 (S.D.N.Y. 2009) (same); *Baker*, 2006 WL 3635392, at *2 (same); *In re Initial Pub. Offering*, 728 F. Supp. 2d at 294 (appellant ordered to post appeal bond of $25,000 for appeal costs).

### 2.    The Court Should Require a $15,000 Bond for the Incremental Expenses of Administering the Settlement During the Appeal

The Second Circuit has not yet considered whether settlement administration expenses may be included in a Rule 7 bond, but courts within this District have.  *See. e.g., In re Gen. Elec.*, 2014 WL 534970, at *10-11 (awarding $49,000 in settlement administration expenses); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (awarding $50,000 in settlement administration expenses), *but see In re Initial Pub. Offering*, 728 F. Supp. 2d at 294 (court did not allow the appeal bond to cover costs for delay and

disruption of the settlement administration).  The Court in *In re General Electric* held: "[W]here

an objector lodges a frivolous appeal to a class action settlement, a district court may impose a

Rule 7 Bond in the amount of the additional administrative expenses that are reasonably

anticipated from the pendency of the appeal." *Id*. at *6. [7]

     While settlement administration costs may be difficult to quantify with precision, this

difficulty does not prevent Courts from estimating such costs and requiring appellees to bond

them.  As one court explained in requiring a $500,000 appeal bond:

> While it is difficult to calculate with mathematical precision the
> duration of Objectors' appeal, or the administrative costs and the
> interest costs to the potentially more than 3 million class members,
> or other costs reasonably incurred under Rule 39 of the Federal
> Rules of Appellate Procedure, the Court finds the sum of $500,000
> . . . to be reasonable.

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2010 WL

786513, at *2 (D.Nev. Mar. 8, 2010).  *See also In re Broadcom Corp. Sec. Litig.*, No. SACV 01-

275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9 (C.D. Cal. Dec. 5, 2005) (including in

appeal bond costs of delay and disruption of settlement administration estimated at $517,000

resulting from, *inter alia*, "costs of updating addresses and other information needed to remain in

contact with Class members, locating lost Class members, . . .  paying monthly fees for

---

[7] Courts outside this District have also approved appeal bonds for costs incurred related to
administration of the settlement pending an appeal.  *See, e.g.*, *In re Cardizem CD Antitrust Litig.*,
391 F.3d 812, 815 (6th Cir. 2004) (affirming imposition of bond that included $123,429 for
"incremental administrative costs"); *In re Nutella Mktg. and Sales Practices*, No. 11-1086 (FLW),
2012 WL 6013276, at *2-3 (D.N.J. Nov. 20, 2012) (requiring appeal bond including $20,000 in
administrative costs resulting from appeal); *In re Compact Disc Minimum Advertised Price Antitrust
Litig.*, No. MDL 1361, 2003 WL 22417252, at *1-2 (D. Me. Oct. 7, 2003) (costs of disruption of
settlement may be included in Rule 7 bond and granting $35,000 appeal bond).

maintaining the website created to inform Class members, and providing phone support to answer inquiries from the Class members").

Here, the Class will incur additional administrative expenses during the pendency of the appeal because Lead Plaintiff will be unable to distribute the Settlement proceeds and, instead, must keep the administration open longer. These expenses include, among other things, the costs of: processing additional claims; responding to written and verbal inquiries from Class Members; website maintenance; telephone charges; and updating stale addresses, among other things. The Federal Court Management Statistics report as of March 2014, found on the United States Courts website, states that the median time in 2014 from filing a notice of appeal to final disposition in the Second Circuit was approximately 11 months. *See* U.S. Court of Appeals- Judicial Caseload Profile, Ex. 2. As the accompanying declaration by the Claims Administrator for the Settlement shows, the additional administrative costs that will be incurred are estimated at approximately $15,000. *See* Declaration of Adam D. Walter in Support of Lead Plaintiff's Motion for Appeal Bond, Ex. 3. [8]

**CONCLUSION**

Through its meritless appeal, the Objector threatens to substantially delay the distribution of the Settlement proceeds and cause the Class needless expense, which Lead Plaintiff may well have difficulty recovering from the Objector after the Class prevails on the appeal. Accordingly, this Court should require at least an $18,000 appeal bond under Rule 7.

---

[8] Lead Plaintiff reserves the right to seek additional costs at the appropriate time.

Dated:  August 29, 2014                     Respectfully submitted,

                                            **LABATON SUCHAROW LLP**

                                            By: _/s/ Jonathan Gardner_
                                            Jonathan Gardner
                                            Eric J. Belfi
                                            Mark Goldman
                                            Carol Villegas
                                            140 Broadway
                                            New York, New York 10005
                                            Telephone:    (212) 907-0700
                                            Facsimile:    (212) 818-0477

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2014, I caused the foregoing MEMORANDUM OF

LAW IN SUPPORT OF MOTION FOR APPEAL BOND to be served electronically on all ECF

participants.


                                                           /s/ *Jonathan Gardner*

                                                        JONATHAN GARDNER