UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>AEROPOSTALE, INC., THOMAS P. JOHNSON and MARK D. MILLER<br><br>    Defendants. | 11-CV-07132 (CM) (GWG)<br><br><u>CLASS ACTION</u> |

**OPPOSITION TO MOTION FOR APPEAL BOND**

Questions presented: should bond should be imposed, and if so, the amount. Pierson tried to save the court's time and attention by offering to deposit $3,000 in class counsel's trust account as security for potential recoverable costs.

**A. <u>The Legal Standard For Imposing an Appellate Bond</u>**

Rule 7 of the Federal Rules of Appellate Procedure allows bonds "to ensure that the appellee will be paid any costs that are awarded to him if the appellant is unsuccessful on appeal." The purpose of the rule is to "protect ... an appellee against the risk of nonpayment by an unsuccessful appellant." *In re AOL Time Warner, Inc.*, 2007 WL 2741033, *4 (S.D.N.Y. Sept. 20, 2007).

Rule 7 specifies that a "district court may require an appellant to file a bond or provide other security in such form and amount as it finds necessary to ensure payment of costs on appeal in a civil case." The costs are those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39. *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985). The Second Circuit has added that attorneys' fees taxable under a fee-shifting statute (specifically as authorized by 17 U.S.C. § 505 in a copyright infringement lawsuit) can also be taxed as costs to determine the amount of an appeal bond. *Adsani v.*

1

*Miller*, 139 F.3d 67 (2d Cir. 1998). Ninth Circuit recently agreed, "The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. P. 39 unless such expenses may be shifted pursuant to another statute." *In re Magsafe Apple Power Adapter Litig.*, 12-15757, 2014 WL 1624493 (9th Cir. Apr. 24, 2014), *citing Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959–60 (9th Cir.2007).

Although normally the appeals court reviews the district court's post-judgment order under Rule 7 for abuse of discretion, where an appeal challenged the extent and type of costs allowable under Rule 7, a *de novo* standard of review applies. *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998). *Accord., Magsafe*, at *1, *quoting Azizian*, at 955 ("[W]e review objections to the amount of a bond for abuse of discretion. However, the meaning of the phrase 'costs on appeal' [in Fed. R. App. P. 7] is a question of law that we review de novo.")

A cost bond should not be imposed where the bond will encumber the Appellant's right to maintain their appeal. A cost bond is meant "to insure that whatever assets a party does possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir.1999); *see also In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1123 (9th Cir.1987). A cost bond should not work as a sanction against the appellant. The merits of the appeal, and whether the appeal was filed in good faith, are questions for the appeals court.

### B. Is a Bond Necessary

Second Circuit courts routinely consider several factors including: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 292 (S.D.N.Y. 2010) (internal quotation omitted). *Accord. Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440(LAP), 2006 WL 3635392, *1 (S.D.N.Y. Dec.12, 2006).

#### 1. *Ability to Pay and Risk of Non-payment*

Plaintiffs skip the two first considerations (1) Appellant's financial ability to post a bond, and (2) the risk that the appellant would not pay appellee's costs if the appeal loses.

They suggest a lack of information about Pierson weighs in favor of imposing the bond, and conclude their analysis without even addressing any risk of non-payment. (Doc 76, p 12) They ignore abundant authority holding that the bond should only be required if there is a risk of non-payment. *See Adsani*, 139 F.3d at 79 (a district court's imposition of any cost bond "can always be described as an implicit finding . . . that the appellant poses a payment risk"). Appellant's ability to pay is only one of the financial factors; when an appellant does not claim financial hardship, the thrust of the analysis is whether there is a risk of non-payment. In *Baker, supra*, the court required the bond because the appellants had already been ordered to pay costs of $473,455.04 but had failed to do so, which indicated that if the appeal were unsuccessful they would not similarly fail to pay costs. 2006 WL 3635392, *1-2. The court also found that since Baker was not a resident of the United States and appeared to have no assets in the United States, "recovery of appeal costs through the judicial process seems unlikely." *Id.* Accord. *Adsani*, 139 F.3d at 79.(imposing an appeal bond where risk of non-payment was especially high given that $57,993.39 in unsecured trial costs had already been taxed against appellant and remained unpaid, beyond that covered by the $50,000.00 trial bond, and appellant had no assets in the United States and was unlikely to pay any unsecured costs). This is not *Adsani,* Pierson is a resident of Fort Worth, Texas, where he is a highly respected member of the legal profession. The objection and appeal are possible because Pierson has an investment portfolio which included Aeropostale stock and more.

### 2.  *The Merits of the Appeal and Appellant's conduct*

The arguments on the merits of the appeal and alleged bad faith or vexatious conduct ignore the appeal and Pierson's conduct. Appellant's opening brief was filed before this motion but the motion focuses on the objection. (Doc 76, p 5-6) Plaintiffs reduce Appellant's arguments regarding the sufficiency of notice to one ancillary point: They concede that the motions for final approval and attorneys' fees were not posted on the settlement website until after the deadline for filing objections and after Pierson complained they were unavailable for class review.

They claim the notice plan "fully satisfied Fed. R. Civ. P. 23 and due process." But

3

Fed. R. Civ. P. 23(h) specifically requires that notice of the attorneys' fee motions be directed to the class and Pierson raised this larger issue. Notice practices have evolved but no appellate court has addressed notice requirements in the internet age. Settlement websites often lack information, shielding inadequate settlements and inflated fee requests. What constitutes the "best notice practicable" today is ripe for review.

Plaintiffs summarily mischaracterize Pierson's argument on the attorneys' fee request "for being higher than the fee awards reported in a law review article." (Doc 76, p 9) Pierson cited a statistical study of attorneys' fees to show that the requested fees were well beyond both the mean and average fees in the Second Circuit and in securities litigation suits; relevant information to provide a context and comparison. The court agreed the fees were "at the high end of the range of other percentage fee awards within the Second Circuit in comparable settlements". (Doc 66, p 20) Pierson offered reasons it was excessive, including a lack of supporting evidence. (AOB, section VI.B.1-3) He did not suggest the law review article is authority.

Plaintiffs claim to have consulted a damages expert, but did not include the expert report or any other admissible evidence to support their damages arguments. (AOB, section VI.B.1) Pierson's arguments include a determination of stock price drop following disclosure, and comparison to contemporaneous market events, suggested the results obtained for the class were low. Class counsel alone had to justify the fee award and the damages assessment. They did not.

Pierson also argues the fees were inflated and presumptively unreasonable for document review. (AOB, section VI.B.2) With inadequate damages assessment and misleading and inadequate lodestar information provided, there was no exceptional outcome to support an exceptional fee.

Plaintiffs' fourth factor argument suggest an objection lawyer's other cases should affect a bond. Class counsel knows Pierson is a respected member of the Texas legal community. He sought and retained experienced objector lawyers. This court has already declined to make any findings warranting sanctions.

4

Under F.R.A.P 38, only the Second Circuit has jurisdiction to determine whether the appeal is frivolous. *In re American President Lines, Inc.*, 779 F.2d at 717, held that a district court's use of Appellate Rule 38 to include certain costs in an appeal bond "effectively preempts th[e Court of Appeals] prerogative to determine, should [appellant's] appeal be found to be frivolous, whether [appellee] is entitled to a Rule 38 recovery." *Id.*

### 3. *Plaintiffs Have Not Made the Necessary Showing*

No district court relishes an appeal, but objectors play an important role in ensuring that class action settlements are fair; any attempt to limit or curtail an objector's right to appeal must be denied. Notwithstanding skepticism regarding "professional objectors," the integrity of the class action system has been built on the determined efforts of objectors, who are responsible for nearly all of the important guiding opinions. *See Eubank v. Pella Corp.*, 13-2091, 2014 WL 2444388 at *3 (7th Cir. June 2, 2014) (Noting "The case underscores the importance both of objectors (for they are the appellants in this case—without them there would have been no appellate challenge to the settlement) and of intense judicial scrutiny of proposed class action settlements.") .

The COMPARATIVE STUDY OF THE TAXATION OF COSTS IN THE CIRCUIT COURTS OF APPEALS UNDER RULE 39 OF THE FEDERAL RULES OF APPELLATE PROCEDURE REPORT TO THE ADVISORY COMMITTEE ON APPELLATE RULES OF THE JUDICIAL CONFERENCE OF THE UNITED STATES (Marie Leary Federal Judicial Center April 2011) is instructive. (Exhibit A)  The study's analysis of Second Circuit cost awards was impaired by the late entry of the Second Circuit to ECF filing, but review of the other circuits, shows that except for the "outliers," recoverable costs in a civil appeal average less than $1,000. The study also underscored congressional interest in the federal courts' adoption of a uniform and fair approach to taxation of costs.

A cost bond is meant "to insure that whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey,* 173 F.3d 104, 112 (2d Cir.1999). A district court may not impose a bond in an amount beyond what is necessary to insure adequate security if to do so

5

would preclude pursuit of an appeal. *Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (holding that statute conditioning appeal on posting of double bond was unconstitutional under Fourteenth Amendment equal protection clause). A bond cannot be imposed to discouraging an appeal. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974)(stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated"). Rule 7 was not intended to be a means of discouraging appeals, even if perceived to be frivolous. *See In re American President Lines, Inc*, 779 F.2d 714, 717 (D.C. Cir. 1985) (denying bond request because it failed as legitimate means of protecting Appellee against possibility that appeal might turn out to be frivolous).

### C.  Allowable Costs

If a bond is warranted, which costs can be included? Rule 7 bond costs are enumerated in Fed. R. App. P. 39, subdivision (e) "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *See American President Lines,* 779 F.2d at 716 ("Appellate Rule 7 specifies that a 'district court may require an appellant to file a bond or provide other security in such form and amount as it finds necessary to ensure payment of costs on appeal in a civil case.' The costs referred to, however, are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39").

Allowable costs do not include "the expenses incurred for administering the settlement during the appeal" and plaintiffs do not cite to any statute authorizing the inclusion of such costs in an appeal bond, as required by *Adsani v. Miller*, 139 F.3d at 72. Plaintiffs cite *In re Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951(DLC), 2014 WL 534970, at *10-11 (S.D.N.Y. Feb. 11, 2014), an unpublished and non-binding district court decision, issued in a case involving a pro se appellant. The approach taken usually in the Second Circuit and nationwide, explicitly rejects the contention that such expenses can be included in an appeal bond. *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) the court held that "Class Counsel's contention that this bond

6

should include the costs to the settlement fund *fails.*" (emphasis added) . Although *Currency Conversion* imposed a bond for $50,000 (on nine appellants), the bond was based on "the voluminous record and the number of appellants." *Id*. The court specifically referred to voluminous photocopy expenses to support the amount required, noting "[m]ultiple copies will be required because several appellants refuse to consent to consolidation of their appeals." *Id*. The court declined to include any costs for delay or settlement administration expenses in its order and explicitly stated that the bond was to "cover the taxable costs of the appeals" only.

Similarly, in *In re IPO Sec. Litig.*, 728 F. Supp. 2d 289 (S.D.N.Y. 2010), the court granted a $25,000 bond, but that amount reflected a voluminous record, not delay costs or settlement administration costs. (The court noted "Taxed at the Second Circuit rate of $0.20 per page, plaintiffs assert that copying costs will amount to at least tens of thousands of dollars. I conclude that $25,000 is likely sufficient to cover these taxable costs."). *Id.* at 295. The court explicitly held that "Costs for delay and attorneys' fees, on the other hand, are not appropriate." *Id.* The court rejected various statutory claims for additional costs, including an argument that Section 11(e) of the Securities Act of 1933 allowed for fee shifting. The court noted:

> I concur with those courts that have concluded that damages for delay cannot be included in Rule 7 bonds where no underlying statute provides for the inclusion of such costs. Thus, there are no grounds for awarding delay costs here.

*Id.*, at 296-297 (rejecting the reasoning in *In re NASDAQ Market–Makers Antitrust Litigation*, which analogized Rule 7 costs to Rule 8 costs, and noting "its reasoning may be flawed".) Plaintiffs also cited *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999), which has been widely rejected by other courts in this circuit , including *In re AOL Time Warner, Inc., Sec. & "Erisa" Litig*., 02 CV. 5575 (SWK), 2007 WL 2741033, *4 & n. 4 (S.D.N.Y. Sept. 20, 2007).

The court in *In re Currency Conversion Fee Antitrust Litig*., *supra*, stated its agreement "with Judge Kram's conclusion [in *AOL Time Warner, supra*] that Fed. R.App. P.

7 does not allow such costs.", citing *In re AOL Time Warner*, 2007 WL 2741033, *4 & n. 4. The *AOL Time Warner* decision provides a detailed analysis of treatment by courts in the Second Circuit:

> "The Second Circuit allows the inclusion only of those costs enumerated in Appellate Rule 39, 28 U.S.C. § 1920, or the substantive statute underlying the appeal. See139 F.3d at 75 n. 9;*see also Baker*, 2006 WL 3635392, at *1 (including attorney's fees in bond pursuant to Copyright Act); *In re NASDAQ*, 187 F.R.D. at 128 (including attorney's fees in bond pursuant to Clayton Act); *Tri-Star Pictures, Inc. v. Unger*, 32 F.Supp.2d 144, 150 (S.D.N.Y.1999) (including attorney's fees in bond pursuant to Lanham Act); *cf. RBFC One, LLC v. Zeeks, Inc.,* 02 Cv. 3231(DFE), 2005 WL 2140994, at *2 (S.D.N.Y. Sept. 2, 2005) (refusing to include cost of attorney's fees in appeal bond where only underlying source of authority for awarding such fees was private contractual provision).

*Id.* at *4. The *AOL* court also rejected the request to include costs incident to delay, observing "In this case, there is no relevant underlying statute that provides for the awarding on appeal of costs incident to delay, and such costs are not listed in Appellate Rule 39." *Id*. The lack of any statute authorizing shifting of such costs determined that the additional costs could not be included in the appeal bond.

Other Circuits are in agreement that administrative costs associated with the delay in implementing a settlement cannot be included in an appeal bond. The Ninth Circuit recently affirmed that **"**The district court may not include in an appeal bond any expenses beyond those referenced in Fed. R.App. P. 39 unless such expenses may be shifted pursuant to another statute." *In re Magsafe Apple Power Adapter Litig*., 12-15757, 2014 WL 1624493 at *1 (9th Cir. Apr. 24, 2014). Regarding the costs that can be included in the bond, the court noted "these costs rarely exceed a few hundred dollars when taxed against an appellant." *Magsafe*, at *1. *Magsafe'*s holding is instructive. The court found:

> The district court abused its discretion by requiring the objectors to post $15,000 appeal bonds given that the only applicable fee-shifting statute is Fed. R.App. P. 39. Accordingly, we vacate the district court's May 29, 2012, order. On remand, the district court may impose an appeal bond that more accurately reflects the amount that a prevailing appellee would be entitled to recover from a losing appellant under Fed. R.App. P. 39.

*Id.* "Costs of delay" are only covered in a *supersedeas* bond available under Fed. R. App. Proc. 8 or Fed. R. Civ. Proc. 62(d). *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007); *In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985). Yet the word "supersedeas" and the relevant legal rules are entirely absent from the motion papers; and are absent from the non-binding, legally erroneous, and unpersuasive district court opinions cited by the Plaintiffs. When the plaintiffs sought to include identical administrative costs in an appeal bond in *Cobell v. Salazar*, 816 F. Supp. 2d 10 (D.D.C. 2011), the district court issued an order to show cause why plaintiffs should not be sanctioned for the request. *See also In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Products Liab. Litig.*, 2:11-MD-2233, 2014 WL 2931465 (S.D. Ohio June 30, 2014) (reducing bond amount from the $176,474.50 requested by plaintiffs, to $2, 474.50 to cover expenses related to preparing and filing the appellate briefs, and printing and copying costs allowed under another statute). These authorities all affirm that a district court has no "inherent or rule-based power" to impose an appeal bond beyond "security for payment of costs on appeal." *American President Lines,* 779 F.2d at 716.

The U.S. Supreme Court's decisions warn against unduly burdening the right to appeal and against improperly expanding the definition of taxable costs. In *Lindsey v. Normet*, 405 U.S. 56 (1972), the court found the excessive bond imposed by the lower court violated the Equal Protection Clause because it "arbitrarily discriminates against tenant wishing to appeal". . . . "heavily burden[ed]" the right to appeal and was "not necessary to effectuate the State's purpose of preserving the property at issue." More recently, in a case considering taxable costs under 28 U.S.C. § 1920 the Supreme Court found that:

> "Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts."
>
> *Taniguchi v. Kan Pac. Saipan, Ltd*., 132 S. Ct. 1997, 2006 (2012). The Court

reasoned that it "s[aw] no compelling reason to stretch the ordinary meaning of the cost items Congress authorized in § 1920." *Id*. Construing this decision, the Central District of

9

California recently rejected a request for a $290,000 bond and also dispelled the argument that class action administrators are court appointed experts; the court ordered a $762 bond, the amount movants admitted were their anticipated copy/binding expenses.  *See In Re Korean Air Lines Co., Ltd. Antitrust Litig.,*  Case 2:07-cv-05107-SJO, (Doc 724, p 2) (N.D. Cal. July 24, 2014) (Exhibit B).  Class action administration costs incurred during any appeal are not recoverable.

### D.  Conclusion

The motion should be denied or bond of no more than $3,000 be ordered.


Dated:   September 11, 2014            By: /s/ Forrest S. Turkish_____
                                                Forrest S. Turkish (FT1197)

                                        Law Office of Forrest S. Turkish
                                        595 Broadway
                                        Bayonne, NJ 07002
                                        Phone: (201) 339-8866
                                        Fax: (201) 339-8456
                                        Email: fsturkish@aol.com

## CERTIFICATE OF SERVICE

      I certify that on September 11, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of New York by using the USDC CM/ECF system and all registered CM/ECF users will be served by the USDC CM/ECF system.

                  ___/s/ Forrest S. Turkish____
                  Forrest S. Turkish