# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF PROVIDENCE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) No. 11-CV-7132 (CM)(GWG) |
| Plaintiff, | ) ) CLASS ACTION |
| vs. | ) ) ) |
| AÉROPOSTALE, INC., THOMAS P. JOHNSON and MARC D. MILLER, | ) ) ) |
| Defendants. | ) ) |

## LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION FOR AN APPEAL BOND

## <u>TABLE OF CONTENTS</u>

ARGUMENT .................................................................................................................................2

I.      AN APPEAL BOND OF AT LEAST $3,000 SHOULD BE ORDERED AS ALL
        OF THE FACTORS SUPPORTING A BOND HAVE BEEN ESTABLISHED ..............2

II.     THE BOND SHOULD COVER COSTS RELATED TO SETTLEMENT
        ADMINISTRATION DURING THE PENDENCY OF THE APPEAL ...........................5

CONCLUSION.............................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adsani v. Miller*,
    139 F.3d 67 (2d Cir. 1998)......................................................................... *passim*

*Ansoumana v. Gristedes Operating Corp.*,
    No. 06-2859-cv, 2007 WL 2028918 (2d Cir. July 12, 2007)................................6

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litigation*,
     No. 02 Cv. 5575, 2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007) ...........................7

*Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*,
    215 F.3d 219 (2d Cir. 2000)......................................................................3

*In re Broadcom Corp. Sec. Litig.*,
    No. SACV 01-275, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005) .........9

*In re Cardizem CD Antitrust Litig.*,
    391 F.3d 812 (6th Cir. 2004) ....................................................................8

*Cobell v. Salazar*,
    816 F. Supp. 2d 10 (D.D.C. 2011) ..............................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)................................9

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ...........................4, 7

*In re Gen. Elec. Co. Sec. Litig.*,
    998 F. Supp. 2d 145 (S.D.N.Y. 2014).......................................................6, 7

*Heekin v. Anthem, Inc.*,
    No. 05–01908, 2013 WL 752637 (S.D. Ind. Feb. 27, 2013) .............................8

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010).......................................................4, 7

*In re Magsafe Apple Power Adapter Litig.*,
    No. 12-15757, 2014 WL 1624493 (9th Cir. Apr. 24, 2014)...............................8

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 124 (S.D.N.Y. 1999) ................................................................7

*In re Nutella Mktg. and Sales Practices*,
   No. 11-1086 (FLW), 2012 WL 6013276 (D.N.J. Nov. 20, 2012) ............................................9

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*,
   No. 11-MD-2247, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) ............................................9

**RULES**

Fed. R. of App. P. 7 ................................................................................................ *passim*

Fed. R. of App. P. 32.1(a) ..............................................................................................7

Fed. R. App. P. 38 ........................................................................................................6

Fed. R. App. P. 39 ....................................................................................................2, 8

Lead Plaintiff, the City of Providence ("Providence" or "Lead Plaintiff"),[1] respectfully submits this reply memorandum of law in further support of its motion for entry of an order requiring Donald Robert Pierson ("Pierson"), represented by attorney Forrest S. Turkish ("Turkish") before this Court and now Joseph Darrell Palmer ("Palmer") before the United States Court of Appeals for the Second Circuit, (collectively, the "Objector"), to post a bond pursuant to Federal Rule of Appellate Procedure 7 ("Rule 7") in order to proceed with his appeal of this Court's May 9, 2014 Memorandum Opinion and Order Granting Lead Plaintiff's Motions for Final Approval of Class Action Settlement; Plan of Allocation; and Attorneys' Fees and Expenses (ECF No. 66).

The Objector has implicitly conceded that a $3,000 bond concerning statutory appeal costs is appropriate by offering to pay such amount into Lead Counsel's escrow account.  (*See* Opposition to Motion for Appeal Bond, "Objector Br." at 1).  This offer was rejected because Lead Counsel believe that an appeal bond of at least $18,000 should be imposed, in order to cover settlement administration delay costs of $15,000 that should be borne by the Objector, rather than the Class.  However, the Objector disputes that the Court can assess such costs. Therefore, the key issue to be decided by the Court is whether settlement administration costs should be part of the requested bond.  Although the Second Circuit has not addressed whether such costs can be imposed under Rule 7, it has not ruled that they cannot and earlier this year Judge Cote squarely held, based on *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998), that they could.

---

[1] All capitalized terms not defined herein have the same meanings set forth in the Stipulation and Agreement of Settlement dated January 29, 2014 (the "Stipulation"), filed with the Court on January 29, 2014.  ECF No. 54-1.

## **ARGUMENT**

I.   **AN APPEAL BOND OF AT LEAST $3,000 SHOULD BE ORDERED AS ALL OF THE FACTORS SUPPORTING A BOND HAVE BEEN ESTABLISHED**

The Objector has offered to deposit $3,000 to cover Lead Plaintiff's costs on appeal, essentially conceding that an appeal bond is appropriate in this case.  He does not credibly challenge the fact that $3,000 is an appropriate amount.  In fact this figure was derived from a review of the information missing from his appellate submissions and Second Circuit statutory costs.  The exhibit[2] that the Objector attaches concerning Federal Rule of Appellate Procedure 39 ("Rule 39") costs does not detract from this conclusion as it has no data concerning the Second Circuit.

With respect to the lack of merit of the appeal, the Objector can point to no argument in his objection or his appeal brief[3] that the Court found to be reasonable or meritorious or worthy of consideration.  At this stage, the question of whether the appeal has merit is squarely a determination for this Court.  "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."  *Adsani*, 139 F.3d at 79 (citation omitted).  This Court thoroughly vetted each of the

---

[2] The Comparative Study of the Taxation of Costs in the Circuit Courts of Appeals Under Rule 39 of the Federal Rules of Appellate Procedure Report to the Advisory Committee on Appellate Rules of the Judicial Conference of the United States (Marie Leary Federal Judicial Center April 2011). Objector Br., Exhibit A.

[3] A copy of the Brief of Appellant Donald Robert Pierson II ("Appeal Brief") is submitted herewith. *See* Reply Declaration of Jonathan Gardner in Further Support of Lead Plaintiff's Motion for an Appeal Bond, Exhibit 1.

Objector's arguments and found each of them to be lacking, even considering whether they were so meritless as to be sanctionable.  (ECF No. 66 at 3-5, 15-17, 20-24, 27-33; ECF No. 74.)

To the extent the Objector faults Lead Plaintiff for failing to focus on the Appeal Brief in its opening motion papers (Objector Br. at 3) because he believes new arguments have been raised that the Second Circuit could find valid, such arguments are frivolous for yet another reason—they have not been preserved for appeal.  *See Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219 n.2 (2d Cir. 2000) (declining to reach untimely arguments, '"[i]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal"') (citation omitted).  On pages 19-23 of the Appeal Brief, the Objector newly argues that the fee award was excessive because the estimated recovery for the Class was not supported by an expert report, or "evidence of economic models or event studies."  Of course he cites no law to support this purported requirement and completely discounts Lead Counsel's declaration explaining the estimates of damages.  *Id*.  As with all his other arguments, this one has absolutely no merit.

With respect to whether the appellant has shown any bad faith or vexatious conduct – no one can dispute that the Objector's lawyers are "experienced objector lawyers."  Objector Br. at 4.  These lawyers are experienced at serially objecting to class action settlements for the sake of objecting in the hope of extracting payments for dismissing appeals, a practice that this Court does not condone.  *See, e.g*., ECF No. 66 at 4 ("I have little time for 'professional objectors,' who, as one of my colleagues has noted, 'undermine the administration of justice by disrupting settlement in the hops of extorting a greater share of the settlement for themselves and their clients.'") (citation omitted).

3

Finally, with respect to the Objector's financial ability to post a bond and the risk of nonpayment, the Objector conflates the two factors. The fact that an appellant may have the present means to pay a bond, does not mean there is no risk of non-payment absent a bond. The Objector acknowledges that he has the ability to pay the bond stating that: "[he] is a resident of Fort Worth, Texas, where he is a highly respected member of the legal profession. The objection and appeal are possible because Pierson has an investment portfolio which included Aeropostale stock and more." Objector Br. at 3. Risk of non-payment is another matter. The Objector has not submitted any financial information or a personal declaration concerning his savings, therefore we have no admissible evidence of what would be available to pay appeal costs ordered by the Second Circuit—a year or more down the road from now. Pierson also does not, apparently, live within the Court's jurisdiction. He lives in Texas and enforcing an order assessing costs and locating assets would take time and cost the Class money. Courts have found a risk of non-payment under similar circumstances. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010)(SAS) ("*IPO*") ("Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them. . . .[P]laintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result, there is significant risk of non-payment."); *see also In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010) (WHP).

For all the foregoing reasons, and those discussed in Lead Plaintiff's opening brief, Lead Plaintiff respectfully submits that an appeal bond pursuant to Rule 7 should be imposed against the Objector.

## II.     THE BOND SHOULD COVER COSTS RELATED TO SETTLEMENT ADMINISTRATION DURING THE PENDENCY OF THE APPEAL

The Objector argues that allowable Rule 7 costs do not include the costs of administering the Settlement during the course of the appeal.  (However, he does not in any way dispute Lead Plaintiff's estimation of such delay costs.)  His conclusion is drawn, in part, from inaccurate applications of the case law and a narrow reading of the Second Circuit's holding in *Adsani*.

Principally, the Objector states that the approach "usually taken in the Second Circuit and nationwide" rejects the contention that settlement administration costs can be included in an appeal bond.  Objector Br. at 6.  This is not true.  While district courts within the Second Circuit have come to different conclusions regarding this issue, as acknowledged by Lead Plaintiff in its opening brief (*see* ECF No. 76, *citing IPO*, 728 F. Supp. 2d at 294), the Second Circuit has not ruled on the issue.  The leading Second Circuit case that has considered costs under Rule 7, *Adsani*, 139 F.3d at 67, did not address administration costs.  Importantly, the Second Circuit would disagree with the Objector's statement that:

> Rule 7 bond costs are enumerated in Fed. R. App. P. 39 subdivision (e) "(1) the preparation and transmission of the record; (2) the reporter's transcript . . .; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal."

Objector Br. at 6, *citing In re Am. President Lines, Inc*., 779 F.2d 714, 716 (D.C. Cir. 1985).

Indeed, this is precisely what the Second Circuit rejected in *Adsani*:

> The principle dispute here is over Rule 39's relevance to the question of what the term "costs" in Rule 7 means.  [Appellant] argues, first that Rule 39 defines "costs" for the Federal Rules of Appellate Procedure, and second, that this definition should be used in Rule 7.  [Appellant's] argument fails because she is wrong on the first point: ***Rule 39 does not define costs for all of the Federal Rules of Appellate Procedure***. . . .Rule 39 does not exhaustively define "costs."

*Adsani*, 139 F.3d at 74 (emphasis added).  The Court went on to find that attorneys' fees under the

statute at issue on appeal could be the subject of an appeal bond, as well as *other* undenominated

costs:

> Inclusion of attorney's fees [by the district court] in a Rule 7 bond does not offend
> Rule 39 ***any more than inclusion of any other costs does***.  Rule 39 provides only
> that (unless the court orders otherwise) costs on appeal go to the winner, and that
> certain procedures be followed. . . . ***Nor does the district court's action contravene
> the apparent purpose of Rule 7.***  The court has made a determination that this
> particular appellant poses a payment risk because she has no assets in the United
> States and has failed to post a supersedeas bond.  ***The purpose of Rule 7 appears to
> be to protect the rights of appellees brought into appeals courts by such appellants,
> yet under [Appellant's] interpretation of Rule 7, she will be required to cover only
> a miniscule fraction of her potential liability for bringing this appeal***.

*Id*. at 74-75 (emphasis added).  The Circuit Court was not concerned that this ruling could lead to

large bonds being required where attorneys' fees are allowable: "We do not think it either bizarre

or anomalous for the amount of the bond to track the amount the appellee stands to have

reimbursed."  *Id*. at 75.

Earlier this year, Judge Cote (the judge who was affirmed in *Adsani*) decided *In re

General Electric Company Securities Litigation*, 998 F. Supp. 2d 145 (S.D.N.Y. 2014), where

the court ordered an appeal bond that included $49,000 in settlement administration expenses,

after carefully analyzing *Adsani* and the holdings mentioned above.  The court explained that

under Federal Rule of Appellate Procedure 38 ("Rule 38"), the Second Circuit can award

"damages" to a successful appellee arising from frivolous appeals:[4]

> Such damages can therefore, in the appropriate circumstances, be included in a Rule
> 7 Bond. . . .The damages that an appellee class incurs when confronted with a

---

[4] An argument is frivolous for purposes of Rule 38 when it is, "totally lacking in merit, framed with
no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence.
*Ansoumana v. Gristedes Operating Corp*., No. 06-2859-cv, 2007 WL 2028918, at *1 (2d Cir. July
12, 2007).

frivolous appeal from a judgment entered pursuant to a class action settlement include those additional administrative costs that are associated with the delay in distribution of a settlement fund. Those costs decrease the amount of the settlement funds available for distribution to the class and represent a quantifiable amount of damages.

*Gen. Elec.*, 998 F. Supp. 2d at 151-52. Speaking of objections pursued by professional objectors, "[u]nder these circumstances, Fed. R. App. P. 7 makes perfect sense: by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of the class." *Id*. at 152.

The Objector does not consider the substance of *General Electric* at all and erroneously dismisses the case as an "unpublished and non-binding district court decision" issued in a case "involving a pro se appellant." Objector Br. at 6. However, there is nothing on the face of the opinion indicating that the opinion is "nonprecedential" and it is common practice in this District to cite and refer to decisions that have not yet been published in a reporter or have only been published on Westlaw or Lexis. *See also* Fed. R. of App. P. 32.1(a) ("Citation Permitted. A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as unpublished, not for publication, nonprecedential, not precedent, or the like; and (ii) issued on or after January 1, 2007.").

The Objector criticizes Lead Plaintiff's reliance on *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (RWS), where the court awarded $50,000 in administrative expenses, essentially because the court came to a different conclusion than that reached in *In re AOL Time Warner, Inc. Sec. & "ERISA" Litigation*, No. 02 Cv. 5575, 2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007) (SWK), *IPO*, 728 F. Supp. 2d at 296, and *Currency Conversion,* 2010 WL 1253741, at *3. The courts in *AOL, IPO,* and *Currency Conversion* did order that appeal bonds be posted, but they did not include the costs of settlement administration given more narrow interpretations of what *Adsani* permits: damages (such as

7

administration costs during an appeal) can only be included where the *substantive statute* underlying the action permits them. *See AOL*, 2007 WL 2741033, at *4; *IPO*, 728 F. Supp. 2d at 296-97; *Currency Conversion,* 2010 WL 1253741, at *3. The courts in *General Electric* and *NASDAQ* looked beyond the statutes underlying the actions and focused on the damages the appeals would cause the appellees. *See Gen. Elec.*, 998 F. Supp. 2d at 151-52; *NASDAQ*, 187 F.R.D. at 128.

The Objector's argument that "other Circuits are in agreement" (*see* Objector Br. at 8) that settlement delay costs cannot be included in an appeal bond is misleading. The main case the Objector relies on, *In re Magsafe Apple Power Adapter Litigation*, No. 12-15757, 2014 WL 1624493 (9th Cir. Apr. 24, 2014), has nothing at all to with, nor did it remotely address, whether administrative costs pending an appeal can be included in an appeal bond. There, the appeal bond request was for $200,000, which included $25,000 in expenses and $175,000 in attorneys' fees. *Id*. at *1. The court ruled that that *attorneys' fees* could not be included because there was no statute authorizing shifting attorneys' fees. *Id*. Additionally, the Ninth Circuit took an approach (*i.e.*, no appeal bond for expenses beyond those referenced in Rule 39) that is ***not consistent*** with the approach taken by the Second Circuit (*see Adsani*, 139 F.3d at 74 ("Rule 39 does not exhaustively define 'costs'")).[5]

---

[5] The Objector grossly misstates *Cobell v. Salazar*, 816 F. Supp. 2d 10 (D.D.C. 2011) as holding that, "[w]hen the plaintiffs sought to include identical administrative costs in an appeal bond in *Cobell* … the district court issued an order to show cause why plaintiffs should not be sanctioned for the request." Objector Br. at 9. This is not what the court did. In *Cobell*, plaintiffs moved for an appeal bond for over $8,306,439.93 that included costs for photocopying ($33,523.02), binding documents ($935.45), attorneys' fees ($2,526,981.46), post-judgment interest ($3.15 million), and increased cost of settlement administration ($2.595 million). 816 F. Supp. 2d at 12. The court denied the motion in its entirety, noting that the "motion and reply brief go beyond fair advocacy and border on misrepresentation." *Id*. at 19. The court noted that plaintiffs made "unsupported

Indeed, *many* courts outside this District have approved appeal bonds for costs incurred related to administration of the settlement pending an appeal.  *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) (affirming imposition of bond that included $123,429 for "incremental administrative costs"); *Heekin v. Anthem, Inc.*, 05–01908, 2013 WL 752637, at *2 (S.D. Ind. Feb. 27, 2013) ("the excess administrative costs created by the delay incident to the appeal, can be characterized as a 'cost of appeal' under Rule 7"); *In re Nutella Mktg. and Sales Practices*, No. 11-1086 (FLW), 2012 WL 6013276, at *2-3 (D.N.J. Nov. 20, 2012) (requiring appeal bond including $20,000 in administrative costs resulting from appeal); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *5 (D. Minn. Sept. 11, 2012) (awarding $20,000 appeal bond for delay costs from appeal); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9 (C.D. Cal. Dec. 5, 2005) (including in appeal bond costs of delay and disruption of settlement administration estimated at $517,000); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1-2 (D. Me. Oct. 7, 2003) (costs of disruption of settlement may be included in Rule 7 bond and granting $35,000 appeal bond).

### **CONCLUSION**

As a result of a meritless appeal, the Objector threatens to substantially delay the distribution of the Settlement proceeds to Class Members and cause the Class needless expense, which Lead Plaintiff may well have difficulty recovering after the Class prevails on appeal.

---

arguments and representations" which may have been intentional or the result of carelessness and ordered counsel to file a declaration addressing the concerns raised by the Court.  *Id*. at 20.

Accordingly, for the foregoing reasons, and those set forth in Lead Plaintiff's opening memorandum, the Court should require an $18,000 appeal bond under Rule 7.

Dated:  September 22, 2014                    Respectfully submitted,

                                              **LABATON SUCHAROW LLP**

                                              By: _/s/ Jonathan Gardner_
                                              Jonathan Gardner
                                              Eric J. Belfi
                                              Mark Goldman
                                              Carol Villegas
                                              140 Broadway
                                              New York, New York 10005
                                              Telephone:    (212) 907-0700
                                              Facsimile:    (212) 818-0477

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 22, 2014, I caused the foregoing LEAD PLAINTIFF'S

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR AN

APPEAL BOND to be served electronically on all ECF participants.


                                      /s/ *Jonathan Gardner*
                                      JONATHAN GARDNER